# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CBF INDÚSTRIA DE GUSA S/A, DA TERRA
SIDERÚRGICA LTDA, FERDUMAR – FERRO GUSA
DO MARANHÃO LTDA, FERGUMINAS
SIDERÚRGICA LTDA, GUSA NORDESTE S/A,
SIDEPAR – SIDERÚRGICA DO PARÁ S/A, and
SIDERÚRGICA UNIÃO S/A,

                *Plaintiffs*,

           - vs -

AMCI HOLDINGS, INC., AMERICAN METALS &
COAL INTERNATIONAL, INC., K-M INVESTMENT
CORPORATION, PRIME CARBON GMBH,
PRIMETRADE, INC., HANS MENDE, AND FRITZ
KUNDRUN,

                *Defendants*.

-------------------------------------------------------------------X

Civil Action No. 13-2581-PKC-JLC

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND THE SECOND AMENDED COMPLAINT

Adam K. Grant
Elizabeth J. Sher
Jonathan S. Zelig

**DAY PITNEY LLP**
Seven Times Square
New York, New York 10036
Tel: 212-297-5800
Fax: 212-916-2940
agrant@daypitney.com

*Counsel for Plaintiffs*

Dated: May 31, 2019

1029251o2.11

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

    A.    Defendants' Dilatory Discovery Conduct ................................................................2

    B.    Plaintiffs Diligently Sought to Add AMCI International as a Defendant in this Action After Discovering the Extent of its Involvement in Defendants' Fraud ....................................................................................................................4

ARGUMENT .........................................................................................................................6

I.    THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE COMPLAINT TO ADD AMCI INTERNATIONAL AS A DEFENDANT ..............................................................6

    A.    Plaintiffs' Amendment to the Complaint Is Not Futile ...........................................7

        1.    The Proposed Third Amended Complaint Adequately Alleges a Claim to Confirm the Award Against AMCI International on an Alter Ego Theory of Liability .............................................................................7

            a.    AMCI International "Controlled" SBT .................................................8

            b.    AMCI International Used its Control of SBT to Defraud Plaintiffs ...............................................................................................9

            c.    AMCI International's Fraud Resulted in an Unjust Loss or Injury to Plaintiffs ......................................................................11

        2.    The Proposed Third Amended Complaint Adequately Alleges a Common Law Fraud Claim against AMCI International ...............................11

        3.    The Proposed Third Amended Complaint Adequately Alleges an Aiding and Abetting Fraud Claim against AMCI International ......................12

        4.    The Proposed Third Amended Complaint Adequately Alleges Civil Conspiracy Claim Against AMCI International ........................................13

    B.    There Has Been No Undue Delay, Bad Faith, or Dilatory Motive on Behalf of the Plaintiffs ...................................................................................................14

    C.    Plaintiffs' Proposed Amendment Is Not Prejudicial .............................................15

II.    The Proposed Amendment Is Timely Because it Relates Back to the Filing of the Original Complaint ........................................................................................................16

    A.    The Proposed Amendment Satisfies Rule 15(c)(1)(B) .........................................17

    B.    AMCI International Received Notice of the Action, and Knew or Should Have Known That This Action Would Have Been Brought Against It .....................17

III.    Good Cause Exists to Modify the Scheduling Order ....................................................18

CONCLUSION ......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.,*
626 F.3d 699 (2d Cir.2010) ......................................................................................7

*Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC,*
402 F. App'x 623 (2d Cir. 2010) ............................................................................11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..........................................7

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.,*
248 F.R.D. 408 (S.D.N.Y. 2008) ..............................................................................6

*CBF Industria de Gusa S/A,* v. AMCI Holdings, Inc.,  316 F. Supp. 3d 365  (S.D.N.Y.
2018)........................................................................................................................8, 9

*Cummings–Fowler v. Suffolk Community Coll.,*
282 F.R.D. 292 (E.D.N.Y.2012) ...............................................................................6

*Dougherty v. Town of N.Hempstead Bd. of Zoning Appeals,*
282 F.3d 83 (2d Cir.2002) .........................................................................................7

*Faulkner v. City of Yonkers,*
105 AD.3d 899, 902 (2d Dept. 2013) ......................................................................13

*Grace v. Rosenstock,*
228 F.3d 40 (2d Cir.2000) .........................................................................................6

*JP Morgan Chase Bank v. Winnick,*
406 F. Supp. 2d 247 (S.D.N.Y. 2005).....................................................................12

*Kassner v. 2nd Ave. Delicatessen Inc.,*
496 F.3d 229 (2d Cir. 2007) ...................................................................................19

*Krupski v. Costa Crociere S. p. A.,*
560 U.S. 538 (2010)..............................................................................................6, 17

*MHANY Mgmt. v. Cty. of Nassau,*
843 F.Supp.2d 287 (E.D.N.Y.2012) .........................................................................6

*Offor v. Mercy Med. Ctr.,*
No. 17 Civ. 1872, 2018 WL 3364389 (S.D.N.Y. July 10, 2018) ..........................12

*Parker v. Columbia Pictures Industries,*
204 F.3d (2d Cir. 2000) ...................................................................................................... 18

*Pasternack v. Lab. Corp. of Am.,*
892 F.Supp.2d 540 (S.D.N.Y.2012) ................................................................................ 6, 7

*Red Ball Interior Demolition Corp. v. Palmadessa,*
874 F. Supp. 576 (S.D.N.Y. 1995) ...................................................................................... 12

*Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC,*
282 F.R.D. 76 (S.D.N.Y.2012) .............................................................................. 16, 17, 19

*Smith v. P.O. Canine Dog Chas,*
No. 02 Civ. 6240, 2004 WL 2202564 (S.D.N.Y. Sept. 28, 2004) ........................................ 6

*Sokol Holdings, Inc. v. BMD Munai, Inc.,*
No. 05 Civ. 3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ...................................... 18

*Victor Lalli Enters., Inc. v. Skippy Candle Corp.,*
578 F. Supp. 1384 (S.D.N.Y. 1984 ...................................................................................... 12

*Williams v. Citigroup Inc.,*
659 F.3d 208 (2d Cir.2011) .................................................................................................... 6

*Williamson v. Recovery Ltd. P'ship,*
542 F.3d 43 (2d Cir. 2008) ...................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 7

Fed. R. Civ. P. 15(a) ............................................................................................................ 2, 6

Fed. R. Civ. P. 15(c)(1)(B) .................................................................................................... 17

Fed. R. Civ. P. 15(c)(1)(C) .................................................................................................... 16

Fed. R. Civ. P.16(b) ......................................................................................................... 18, 19

Fed. R. Civ. P. 21 .................................................................................................................... 6

## PRELIMINARY STATEMENT

Although discovery in this case officially commenced in January 2018 by order of the District Court, and although Plaintiffs diligently sought productions of information and documents from Defendants in the weeks and months that followed, Defendants simply refused to produce the vast majority of their responsive documents until February 2019.  Indeed, prior to a November 15, 2018 order of the District Court that set final deadlines for production of documents, Defendants had produced only 62 documents from Europe in eight months of discovery.

When Defendants finally produced thousands of responsive documents from Europe on or just before their February 28, 2019 deadline, Plaintiffs quickly learned that AMCI International GmbH (formerly known as AMCI International AG, and referred to hereafter as "AMCI International") – a  member of the AMCI Family wholly owned and controlled by Defendants Mende and Kundrun – played an instrumental role in the fraudulent scheme by which Defendants dominated, controlled, and ultimately looted SBT in an effort to avoid payment of Plaintiff's breach of contract claim.  Specifically, Defendants learned that: (i) Protecting AMCI International from liability to Plaintiffs was a central goal of Defendants' scheme; (ii) AMCI International orchestrated key elements of Defendants' scheme, including the pre-textual "Fairness Opinion" through which Defendants sought to cloak their fraudulent transactions with a veneer of legitimacy; (iii) ██████ ████, a trusted associate of Mende who played a pivotal role in Defendants' scheme and who controlled the funds exchanged as part of the scheme, was acting at all relevant times (in whole or in part) as an employee of AMCI International; and (iv) Defendants initially contemplated AMCI International as the intended recipient of the fraudulent transfer of shares of Defendant Primetrade.

Immediately upon learning of AMCI International's central role in Defendants' scheme, Plaintiffs wrote to Defendants on March 8, 2019, to seek consent to add AMCI International as a defendant in the case:

> Based on the European Production, it has become clear that AMCI
> International, AG was directly involved in these schemes and is, like
> the other Defendants, an alter-ego of SBT and Prime Carbon.
> Accordingly, we request your consent to add AMCI International,
> AG as a party.

Defendants refused to grant their consent. Accordingly, Plaintiffs now file this motion. For the reasons set forth below, this Court should exercise its discretion pursuant to Fed. R. Civ. P. 15(a) to "freely grant leave" to Plaintiffs to amend their pleading because "justice so requires."

## BACKGROUND

Rather than burden the Court with a protracted discussion of the factual history of this dispute, Plaintiffs refer the Court to the factual history set forth in Plaintiffs' Memorandum of Law in Support of the Motion to Compel Production of Documents Subject to the Crime-Fraud Exception to the Attorney-Client Privilege and Work-Product Doctrine. (Dkt No. 202). The subset of background facts directly pertinent to this motion are set forth below.

### A. Defendants' Dilatory Discovery Conduct

On December 19, 2017, the Second Circuit issued its mandate remanding the matter for further proceedings before this Court. (Dkt. No. 99). By order dated December 21, 2017, Judge Sweet set a pre-trial conference for January 20, 2018. (Dkt. No. 101). On January 4, 2018, Defendants submitted a letter motion for a stay of discovery pending a decision on those aspects of Defendants' prior motions to dismiss that had not been decided by Judge Sweet and were not considered on appeal by the Second Circuit. (Dkt. # 104). On January 9, 2018, Judge Sweet entered an order declining Defendants' request to stay discovery. (Dkt. # 107).

In February 2018, Plaintiffs propounded discovery requests on each of the Defendants directed toward uncovering information relevant to Plaintiffs' alter-ego, successor liability, fraudulent transfer, and fraud claims. (Declaration of Adam K. Grant, dated May 31, 2019 ("Grant Decl."), ¶ 21). Despite serving written responses to Plaintiffs' document demands in March 2018,

Defendants refused to begin production of documents until the completion and entry of a protective order. (*Id.* at ¶ 22). A stipulated protective order was eventually agreed to by the parties and signed by the Court on June 20, 2018. (Dkt. No. 120). Nonetheless, Defendants did not begin producing documents for over a month thereafter, and even then, Defendants' production was, as summarized below, piecemeal and slow. (Grant Decl., ¶ 23).

On October 30, 2018, Plaintiffs requested the Court's assistance in setting discovery deadlines as well as a schedule for motions related to alleged deficiencies in the Responses. (Dkt. No. 137). Plaintiffs sought a schedule of two months for the completion of document production, while Defendants asked Judge Sweet to set a schedule of five months for the completion of document production. (Dkt. Nos. 136-137). By scheduling order dated November 15, 2018, Judge Sweet set a discovery schedule, requiring, *inter alia*, completion of U.S. document production by December 31, 2018, and foreign document production by February 28, 2019. (Dkt. No. 142).

At the time of this scheduling order, Defendants still had produced only a total of 3,886 documents from custodians in the United States. (Grant Decl., ¶ 27). Specifically, Defendants' U.S. production consisted of ten productions produced on the following dates:

| Production Volume | Date | # of Documents |
|---|---|---|
| 1 | July 27, 2018 | 384 |
| 2 | September 20, 2018 | 498 |
| 3 | September 25, 2018 | 1,016 |
| 4 | September 26, 2018 | 584 |
| 5 | October 3, 2018 | 851 |
| 6 | October 23, 2018 | 546 |
| 7 | October 30, 2018 | 7 |
| 8 | **December 31, 2018 (Deadline)** | 3,734 |
| 9 | February 27, 2019 | 198 |
| 10 | April 3, 2019 | 3 |

(*Id.* at ¶ 29). Thus, after Judge Sweet's November 15, 2018 order, Defendants did not make any productions from U.S.-based custodians until the last day of Judge Sweet's deadline, at which point

they produced 3,734 documents, bringing the total production from custodians in the United States to 7,620.  (*Id.* at ¶ 28).

Similarly, prior to Judge Sweet's November 15, 2016 order, Defendants had produced a total of 62 documents from custodians in Europe.  (*Id.* at ¶ 29). Specifically, Defendants' foreign productions were made in 10 tranches as follows:

| Production Volume | Date | # of Documents |
|---|---|---|
| 1 | August 23, 2018 | 27 |
| 2 | September 12, 2018 | 1 |
| 3 | September 25, 2018 | 34 |
| 4 | February 14, 2019 | 4667 |
| 5 | February 22, 2019 | 2061 |
| 6 | **February 28, 2019 (Deadline**) | 7922 |
| 7 | March 11, 2019 | 4 |
| 8 | March 21, 2019 | 74 |
| 9 | March 26, 2019 | 1 |
| 10 | May 3, 2019 | 401 |

(*Id.* at ¶ 32). Thus, Defendants did not produce a single additional document from their European custodians until February 14, 2019, when they produced nearly 5,000 documents.  (*Id.* at ¶ 30).  In the two weeks that followed the February 14, 2019 production, Defendants produced nearly 10,000 documents from their European custodians, with nearly 80% of that total produced on the very last day of Judge Sweet's deadline.  (*Id.*).

## B. Plaintiffs Diligently Sought to Add AMCI International as a Defendant in this Action After Discovering the Extent of its Involvement in Defendants' Fraud

Until Defendants' completed their discovery productions, Plaintiffs had no direct knowledge of AMCI International's substantial involvement with Defendants' fraud.  Although Plaintiffs had information that AMCI International owned SBT, they did not have any reason to believe AMCI International or its employees (who were unknown to Plaintiffs at that time) were involved in Defendants' fraudulent acts.  It was not until Plaintiffs completed their review of the 14,650 documents that Defendants produced in the last two weeks of February, 2019 that Plaintiffs learned

-4-

of AMCI International's pivotal role in Defendants' fraud.[1]  As detailed in the Argument section below, the critical documents revealing the nature and extent of AMCI International's involvement in the fraudulent scheme were not produced until this time.

Within ten days of the close of foreign discovery on February 28, 2019, Plaintiffs requested consent from Defendants to join AMCI International as a defendant.  Specifically, in a March 8, 2019 letter from Adam Grant, Esq., Plaintiffs wrote:

> Based on the European Production, it has become clear that AMCI International, AG was directly involved in these schemes and is, like the other Defendants, an alter-ego of SBT and Prime Carbon. Accordingly, we request your consent to add AMCI International, AG as a party.

Defendants replied three weeks later, on March 29, 2019:

> We decline your request for consent to add AMCI International, AG, now known as AMCI International GmbH, as a party to this lawsuit. We do not believe there is any justified legal basis for Plaintiffs to do so. Moreover, any attempt to add and join AMCI International (whose existence has long been known to Plaintiffs and to whom multiple references are made in the Second Amended Complaint) is untimely both generally and also under the time deadlines for pleading amendment and joinder established, with Plaintiffs' concurrence, by the Court's January 24, 2018 "So Ordered" approval of the parties' Rule 26(f) Joint Discovery Plan (at p. 6) (Doc. Nos. 111-112).

Three days later, on April 1, 2019, Plaintiffs' replied:

> It was only after Defendants' European Production (over 99 % of which was produced between February 14, 2019 and February 28, 2019), that we were able to appreciate AMCI International AG's role in Defendants' scheme. There is zero prejudice to Defendants from this entity being added at this point.

This motion followed, with leave from the Court.  (Dkt. No. 217).

---

[1] Defendants made their first production of U.S. documents on July 27, 2018 and European documents on August 23, 2018, after Plaintiffs filed their SAC.

## ARGUMENT

### I.   THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THE COMPLAINT TO ADD AMCI INTERNATIONAL AS A DEFENDANT

Federal Rule of Civil Procedure 21, which governs joinder of parties, provides that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21. "In deciding whether to permit joinder, courts apply the 'same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008) (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y.1980)); *accord Smith v. P.O. Canine Dog Chas*, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n. 11 (S.D.N.Y. Sept. 28, 2004).

Rule 15(a) in turn provides that, in cases where a party cannot amend as a matter of course, "[a] party may amend its pleading…only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a).  A court "**should freely give leave when justice so requires**." *Id.*; *see also Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 538 (2010) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *Grace v. Rosenstock,* 228 F.3d 40, 56 (2d Cir. 2000); *MHANY Mgmt. v. Cty. of Nassau,* 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately 'within the sound discretion of the court whether to grant leave to amend'")(quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994)).

In accordance with this liberal standard, a court should deny leave to amend only where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Williams v. Citigroup Inc.,* 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  The burden is on the opposing party to establish that the amendment would be prejudicial or futile.  *Pasternack v. Lab. Corp. of Am.,* 892 F. Supp. 2d 540, 529 (S.D.N.Y. 2012); *Cummings–Fowler v. Suffolk Community*

*Coll.,* 282 F.R.D. 292, 296 (E.D.N.Y. 2012).  With respect to joinder of AMCI International, this is a burden Defendants cannot meet.

### A.  Plaintiffs' Amendment to the Complaint Is Not Futile

Amending the SAC to add AMCI International as a defendant would not be "futile."  To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss.  *AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.");  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002).  Accordingly, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  As when considering a motion to dismiss under Rule 12(b)(6), on a motion for leave to amend a pleading, the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor.  *See Dougherty*, 282 F.3d at 91–92.

As reflected in the accompanying proposed Third Amended Complaint, Plaintiffs have alleged more than sufficient facts regarding AMCI International's involvement in Defendants' fraudulent scheme to withstand a motion to dismiss.  Moreover, Defendants bear the burden to demonstrate whether the proposed amendment would be futile.  *Pasternack.,* 892 F. Supp. 2d at 529.  Defendants cannot meet that burden.

### 1.  The Proposed Third Amended Complaint Adequately Alleges a Claim to Confirm the Award Against AMCI International on an Alter Ego Theory of Liability

Plaintiffs' proposed enforcement claim against AMCI International is premised on alter-ego liability.  As Judge Sweet held in denying Defendants' motion to dismiss the SAC, alter-ego liability may attach where: "(1) the owner has exercised such control that the corporation has become a mere

instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *CBF Industria de Gusa S/A, v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 365, 646 (S.D.N.Y. 2018) (quoting *Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*, 402 Fed. App'x 623, 625 (2d Cir. 2010)). While courts consider a number of factors in making this determination, there is no "firm rule," only a "general principle … that liability is imposed ***when doing so would achieve an equitable result***." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (emphasis added) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989). Here, Plaintiffs' proposed Third Amended Complaint adequately pleads an enforcement claim against AMCI International based on alter ego liability.

### a. AMCI International "Controlled" SBT

The Third Amended Complaint adequately pleads AMCI International's "control" over SBT. Mende (along with Kundrun) wholly owned AMCI International through a series of trusts and subsidiaries.[2] AMCI International, in turn, wholly owned both Prime Carbon and SBT at all relevant times to this litigation. While this ownership structure has been known to Plaintiffs for some time, it was not until Defendants produced documents or after February 14, 2019, that Plaintiffs had a good faith basis to assert that Mende used his control over AMCI International to help effectuate the fraudulent scheme to render SBT judgment-proof, and that the fraudulent scheme was done, in part, to protect Mende's interest in AMCI International. (*See, e.g.,* Grant Decl., Exs. 5, 6, 9, 11-15).

Defendants' 2019 productions thus established AMCI International as a critical tool used by Mende to dominate SBT. Accordingly, for the same reasons that Judge Sweet found Plaintiffs' alleged facts sufficient on a motion to dismiss to show Mende "controlled" SBT, the Court should find Plaintiffs' alleged facts sufficient to show AMCI International was used by Mende to control

---

[2] *See* (Grant Decl., Ex. 4) (organizational charts produced by Defendants depicting ███████ ███████████████████████████████████████████████████.

SBT.  It is no coincidence that, when planning his scheme to render SBT judgment-proof against Plaintiffs' claims, Mende selected Prime Carbon as the receptacle for SBT's assets. Prime Carbon, like SBT, was ██████████████████████████████████████████████████████████ ████████████████████████████████ (Grant Decl., Ex. 4, at DEFENDANTS_00008498.)

### b. AMCI International Used its Control of SBT to Defraud Plaintiffs

Further, there can be no serious dispute that AMCI International, in conjunction with Mende, used its control over SBT and Prime Carbon to defraud Plaintiffs. As Judge Sweet previously held, "[t]his second prong 'can be satisfied either by showing outright fraud, or another type of 'wrong,' such as a 'breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights.'"" *CBF Industria de Gusa S/A*, 316 F. Supp. 3d at 649 (quoting *Mobile Commc'n A. S. v. Storm LLC*, 587 F. Supp. 2d 594, 620 (S. D. N. Y. 2008)).  Documents recently produced by Defendants demonstrate that AMCI International played a key role in orchestrating and effectuating the fraudulent scheme to transfer SBT's assets out of Plaintiffs' enforcement reach.

As a preliminary matter, it bears noting that Defendants' professed goal in arranging the December 23, 2009 agreement whereby SBT transferred all of its assets to Prime Carbon (the "Secret Transfer Agreement") was to insulate AMCI International from potential liability to Plaintiffs. When planning the parameters of the Secret Transfer Agreement in October 2009, ████████████ (a director for Prime Carbon [Grant Decl., Ex. 2 at p.8]) wrote to Mende expressing the concern that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Grant Decl., Ex. 5. In response, Mende expressed that it was ███████ to ████████

███████████████████. (*Id.*)[3]

But not only was AMCI the beneficiary of Defendants' fraudulent scheme, it was also an

active participant in it. AMCI International's involvement in the fraud began long before execution

of the Secret Transfer Agreement. Specifically, from a document produced on February 28, 2019,

Plaintiffs learned ████████████████████████████████████████████████████████

████████████. (Grant Decl., Exs. 6, 7) (email from ████████ to █████████ attaching

the ███████████████████████████████████████████████ and the

Draft Share Purchase Agreement for the shares of Primetrade, Inc. between AMCI International

AG and SBT). That the shares of Primetrade were eventually sold to Prime Carbon instead of

AMCI International does not negate AMCI International's involvement in the fraud.

Furthermore, AMCI International employees were involved in the planning and effectuation

of Defendants' fraudulent scheme. From a document produced on February 28, 2019, Plaintiffs

learned that ████████████████████████████████████████████████████████

████ (Grant Decl., Ex. 8), played a pivotal role in effectuating the fraudulent transactions at issue in

this case. Although Defendants identified ████ as a Director of Prime Carbon (Grant Decl., Ex. 2,

p. 8), the documents reviewed from Defendants' dilatory document productions revealed that ████

was acting (in whole or in part) in her capacity as an employee of AMCI International. (Grant Decl.,

Ex. 9.) (email wherein ████████████████████████████████████████████████

████████).

In that capacity, ████ was pivotal in orchestrating and effectuating the secret Share Purchase

Agreement between Prime Carbon and AMCI Holdings, Inc. ("AMCI Holdings"), which was itself



---

[3] This document was produced by Defendants on February 28, 2019. In this context, it is fair to infer that by referring to ████ and ████ Mende was referencing AMCI International AG, which was ████████████████ ████ (Grant Decl., Ex. 5.)

designed to further transfer SBT's assets out of Plaintiffs' enforcement reach (the "Secret SPA") (Grant Decl., Ex. 9).  Specifically, from a document produced on December 31, 2018, Plaintiffs learned that Mende directed that the sale proceeds from the Secret SPA went directly to an account strictly controlled by him and ███████ (Grant Decl., Ex.  8, 10.)  ████ – who, again, was an AMCI International employee – maintained strict control over this account, even to the point where she personally had to convey information regarding the account to Prime Carbon's own accounting personnel, who themselves had no ability to access the account.  (Grant Decl., Ex. 9).  In addition, Bolz assisted with the pre-textual "Fairness Opinion" authored by ██████, which was itself designed to cloak the Secret Transfer Agreement with a veneer of legitimacy.  (Grant Decl., Ex. 12) (providing ████████████████████████████.

### c. AMCI International's Fraud Resulted in an Unjust Loss or Injury to Plaintiffs

To satisfy the final element of alter-ego liability, Plaintiffs must demonstrate the fraudulent scheme "exacerbated [SBTs'] insolvency and rendered [it] less able to pay damages." *Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*, 402 F. App'x 623, 626 (2d Cir. 2010).  Here, Defendants' fraudulent scheme, in which AMCI International was both a primary beneficiary and an active participant, not only "exacerbated" SBT's insolvency, it literally and intentionally drove SBT into bankruptcy.  As a result, Plaintiffs have not only been deprived of the funds awarded in the Award, but also have incurred, to date, millions of dollars in legal fees, lost interest, and other expenses trying to enforce the Award.

### 2. The Proposed Third Amended Complaint Adequately Alleges a Common Law Fraud Claim against AMCI International

The proposed Third Amended Complaint also adequately pleads a claim for common law fraud against AMCI International.  (Grant Decl., Ex. 2).  There are five elements necessary to sustain a claim in fraud under New York law:  "(1) misrepresentation of a material fact; (2) the falsity

of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance." *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 584 (S.D.N.Y. 1995).  Each of these elements is satisfied here.

Plaintiffs adequately allege that: (i) Defendants, including AMCI International, effectuated a fraudulent scheme intended to render SBT judgment proof from Plaintiffs' claims (*See, e.g.,* Grant Decl., Ex. 1, ¶¶ 3-12, 63-75, 134-136, 176-190); (ii) Defendants' scheme involved a series of material misrepresentations and omissions made by counsel for AMCI International's alter ego, SBT, to both Plaintiffs and the ICC Paris (*see, e.g., id.*,   ¶¶ 55-62, 182-190); (iii) these misrepresentations and omissions were materially false (*id.*); (iv) these representations and omissions were made with the specific intent to defraud Plaintiffs (*id.*); (iv) Plaintiffs reasonably relied on these representations made by counsel before the ICC Paris (*id.*);[4]  and (v) Plaintiffs were damaged by such reasonable reliance (*id.*, ¶ 190).   AMCI International's specific involvement in the scheme is outlined in Argument § I.A.1, *supra*.

### 3.  The Proposed Third Amended Complaint Adequately Alleges an Aiding and Abetting Fraud Claim against AMCI International

Plaintiffs' proposed Third Amended Complaint adequately pleads a claim for aiding and abetting fraud against AMCI International.  To state a claim under New York law for aiding and abetting fraud, Plaintiffs must allege: "'(1) the existence of a fraud; (2) a defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (quoting *Filler v. Havit Bank*, No 01 Civ. 9510, 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003)).  Once again, the proposed Third Amended Complaint adequately pleads the existence of a fraud.  (Grant

---

[4] *Offor v. Mercy Med. Ctr.*, No. 17 Civ. 1872, 2018 WL 3364389, at *5 (S.D.N.Y. July 10, 2018) ("Counsel is entitled to rely upon the factual representations of his adversary, particularly where, as here, the representations were repeated, clear, and unequivocal."); *Victor Lalli Enters., Inc. v. Skippy Candle Corp.*, 578 F. Supp. 1384, 1386 (S.D.N.Y. 1984) (finding party entitled to rely on representations of opposing counsel made in court).

Decl., Ex. 1, ¶¶ 182-190). Further, the proposed Third Amended Complaint alleges that AMCI International, through its employees, knew about the fraud and provided substantial assistance in the commission of the fraud. (*Id.*, ¶¶ 191-196; 176-191).

### 4. The Proposed Third Amended Complaint Adequately Alleges Civil Conspiracy Claim Against AMCI International

Lastly, Plaintiffs' proposed Third Amended Complaint also adequately pleads a claim for civil conspiracy against AMCI International. Under New York law, "to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 902 (2d Dept. 2013) (quoting *Perez v Lopez*, 97 A.D.3d 558, 560 (2d Dept. 2012). Here, the Third Amended Complaint alleges a cognizable tort: the fraudulent scheme detailed throughout this motion and the Third Amended Complaint (*see, e.g.,* Grant Decl., Ex. 1, ¶¶ 182-190). The proposed Third Amended Complaint also adequately pleads AMCI International's agreement to the tort (*see, e.g., id.*, ¶¶ 191-196) and its overt actions taken in furtherance of the tort (*see, e.g., id.* at ¶¶ 176-181, 191-196). The evidentiary support for these allegations was not produced by Defendants until long after the deadline to join AMCI International had already passed. (*See, e.g.,* Argument § I.A.1, *supra*).

***

It must be emphasized that each of these claims (the enforcement claim, the fraud claim, the aiding and abetting fraud claim, and the civil conspiracy claim) has already been upheld by this Court and the Second Circuit insofar as they were alleged against AMCI International's co-defendants. The proposed Third Amended Complaint repeats against AMCI International many of the same allegations that Judge Sweet and the Second Circuit have already determined to be sufficient to state claims against AMCI International's co-defendants; only now, the direct involvement of AMCI International and its employees in each of these claims is included in the pleading. Thus, for the

same reasons the Second Amended Complaint asserts valid claims against AMCI International's co-defendants (and alter egos), the proposed Third Amended Complaint does so against AMCI International.   As such, Defendants cannot meet their burden of demonstrating that Plaintiffs' proposed joinder of AMCI International to this action would be futile.

### B.   There Has Been No Undue Delay, Bad Faith, or Dilatory Motive on Behalf of the Plaintiffs

The timing of Plaintiffs' effort to join AMCI International as a defendant is not a result of any undue delay, bad faith, or dilatory motive by Plaintiffs.   Rather, it is a direct result of Defendants' undue delay and dilatory conduct in connection with their discovery obligations.

At the time Plaintiffs filed the SAC in 2018, discovery in the case had been ongoing for approximately five months, but Defendants had yet to produce a single document. (Grant Decl., ¶ 29).   Consequently, Plaintiffs did not know (and could not reasonably have known) of AMCI International's direct involvement in these matters.   At the time Plaintiffs filed the SAC, they were aware that AMCI International owned SBT.[5]   However, mere ownership alone is not sufficient to adequately plead a claim for alter ego liability.   Instead, it was only upon completing a review of the 14,650 documents produced by Defendants between February 14, 2019 and February 28, 2019 that Plaintiffs learned about the extensive involvement of AMCI International's employees in carrying out the fraud, and that the fraud was designed to help protect AMCI International's (and Mende's interests therein) from liability to Plaintiffs.

For example, through documents finally produced on February 28, 2019, Plaintiffs learned that:

- AMCI International was involved in discussions with the company that generated the pre-textual Fairness Opinion in connection with Defendants' fraudulent transfer.   Specifically, in an email, █████████

---

[5] It was only through the organizational charts produced by Defendants on October 30, 2018 that Plaintiffs learned that AMCI International also owned Prime Carbon.

███████████████████████████████
███████████████████████████ (Grant Decl., Ex. 13), and it
attached a draft letter from ***AMCI International***, which agreed that
the ████████████████████████████████████
███████████████████████████████████████
(Grant Decl., Ex.14).

- AMCI International was the original party that was supposed to
  acquire Primetrade's shares in 2009.  (Grant Decl., Exs. 6, 7).

- █████████, an AMCI International employee and a member of
  Mende's trusted inner circle (Grant Decl., Ex. 8), played a pivotal role
  in effectuating the fraudulent transactions at issue in this case. (Grant
  Decl., Exs. 8-10, 12).

Upon learning of AMCI International's extensive role in Defendants' fraudulent scheme,
Plaintiffs acted immediately to add AMCI International to the case.  On March 8, 2019, less than
two weeks after receiving the key documents referenced directly above, Plaintiffs sought consent
from Defendants to join AMCI International as a defendant.  On March 29, 2019, Defendants
declined on the basis of timeliness, "both generally and also under the time deadlines for
pleading amendment and joinder established" by the Court's January 25, 2018 So-Ordered Joint
Discovery Plan (the "Discovery Plan").  (Dkt. No. 112).  Notably, the Discovery Plan did not
actually set a deadline for the amendment of pleadings or the joinder of additional parties; it
simply noted the parties' differing positions on the matter.

Regardless of the deadline imposed (or not imposed) by Judge Sweet, however, it was
Defendants' dilatory discovery conduct – not delay by Plaintiffs – that resulted in the filing of
this motion at this time.

### C.  Plaintiffs' Proposed Amendment Is Not Prejudicial

As set forth above, AMCI International was not only the parent company of SBT and Prime
Carbon, but also, at all times, was under the complete ownership and control of Mende and

---

[6] Other instances have been set forth *supra* in Section I.B.

Kundrun, who are named Defendants in this action.  There is no prejudice to any of the Defendants in adding AMCI International as a defendant.  Furthermore, as of March 1, 2010, AMCI International was on notice of Plaintiffs' claims.  (Grant Decl., Ex. 15).

Moreover, the amendment will cause minimal delay (if any) to the case.  *First*, documents have already been collected from AMCI International's employees, and many documents that appear to have originated at AMCI International have already been produced.  Any additional requests for documents should not be burdensome.  *Second*, to the extent additional documents need to be produced in response to document requests sent to AMCI International, such production should not be burdensome given Defendants' prior productions.  Moreover, additional productions cannot disrupt the case schedule because: (i) there presently is no case schedule, and (ii) Defendants likely will have significant additional discovery obligations following this Court's rulings on Plaintiffs' various motions to compel.  *Third*, to the extent Plaintiffs serve additional interrogatories on AMCI International, Defendants should be able to respond with minimal additional review of company files.  Moreover, ▮▮▮▮▮▮▮ who was an employee of AMCI International, is the individual who verified Prime Carbon's Second and Third Revised Responses and Objections to Plaintiff's First Set of Interrogatories, and thus is already familiar with the facts relevant to this case.

## II.    The Proposed Amendment Is Timely Because it Relates Back to the Filing of the Original Complaint

Plaintiffs' proposed joinder of AMCI International relates back to the filing of the original complaint and is therefore timely.  Federal Rule of Civil Procedure 15(c)(1)(C) governs relation back, and provides that:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Krupski*, 560 U.S. at 553.  This standard is met here.

### A.   The Proposed Amendment Satisfies Rule 15(c)(1)(B)

Plaintiffs satisfy Rule 15(c)(1)(B)'s requirement that the proposed amendment to a pleading must assert a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.   Plaintiffs intend to assert only claims arising from the underlying fraud and transactions against AMCI International, which acted as an alter-ego, conspirator, and aider and abettor throughout the relevant time period.

### B.   AMCI International Received Notice of the Action, and Knew or Should Have Known That This Action Would Have Been Brought Against It

AMCI International was on notice of Plaintiffs' claims since the inception of this dispute. *First*, Plaintiffs placed AMCI International on notice of their intent to dispute SBT's breach of its contracts in March of 2010.  (Grant Decl., Ex. 15.)  *Second*, Mende, whose pervasive involvement in and structuring of the Secret Transfer Agreement led SBT to evade its liabilities to Plaintiffs, owned (with Kundrun) AMCI International and currently holds a position as director with the company. (Grant Decl., ¶ 3).   Throughout the relevant time period, Mende used his control over AMCI International to protect its assets while using Primetrade, another company in the AMCI International family, to structure the deal.   (Grant Decl., ¶ 5).     *Third*, AMCI employees and resources were used in the fraud and to ensure that the fraud remained surreptitious.  (Grant Decl., ¶¶ 9, 12).  Certainly, AMCI International knew or should have known that this action would have been brought against it.

### III.     Good Cause Exists to Modify the Scheduling Order

Pursuant to Rule 16(b), the Court must enter a scheduling order setting deadlines for subsequent proceedings in the case, including "the time to join other parties [and] amend the pleadings." Fed. R. Civ. P. 16(b).  Plaintiffs acknowledge that this Court So-Ordered the parties' Joint Discovery Plan on January 25, 2018 (Dkt. No. 112), wherein Plaintiffs had proposed a deadline of February 16, 2018, for amendment of pleadings and March 1, 2018, for joinder of parties, and Defendants had requested the deadlines to be 30 days after the disposition of the motion to dismiss (thus July 15, 2018).

In certain cases, however, the Court may determine that a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Parker v. Columbia Pictures Indus.,* 204 F.3d 339 (2d Cir. 2000) (internal quotations omitted).  "In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Id.*

"Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines." *Sokol Holdings, Inc. v. BMD Munai, Inc.,* No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (internal citations and quotations omitted).  "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id.*  (citing *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).  In determining whether the good cause standard has been met, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007).  "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.; see Ritchie*

*Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC,* 282 F.R.D. 76, 79 n. 2 (S.D.N.Y. 2012).

As discussed above, Plaintiffs moved diligently to seek Defendants' consent to amend the complaint within days of discovering AMCI International's role in Defendants' fraudulent scheme.[7] Furthermore, the Court's Order, which has long been outdated as this complex case has progressed, should not be a reason to deny Plaintiffs of their right to join a party that was directly involved in the underlying fraud. The extensive docket and meritorious motion practice in this case demonstrates Plaintiffs' diligent prosecution of the case. Indeed, there is no better example than the fact that within 10 days of receiving Defendants' substantial deadline-day document production (which included 14,650 documents produced between February 14, 2019 and February 28, 2019), Plaintiffs had reviewed the documents, learned of AMCI International's involvement, and pursued an amended pleading to add AMCI International as a defendant in the case. Certainly there is good cause to modify the Court's outdated scheduling Order and permit Plaintiffs to join AMCI International as a defendant.

---

[7] Judge Sweet's passing required Plaintiffs to await re-assignment of this case to a new judge prior to bringing this motion. Plaintiffs diligently raised this issue in the joint letter to the Court on April 29, 2019. (Dkt. No. 216).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs leave to amend the Second Amended Complaint to join AMCI International as a defendant in this action.

Respectfully submitted,

Dated: May 31, 2019

Adam K. Grant
Elizabeth J. Sher
Jonathan S. Zelig

**Day Pitney LLP**
Seven Times Square
New York, NY 10036
T: (212) 297-5803
F: (212) 499-4154
agrant@daypitney.com

*Counsel for Plaintiffs*