UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CBF INDUSTRIA DE GUSA S/A, et al.,

                Plaintiffs,                13-cv-2581 (PKC) (JLC)

    -against-                            OPINION
                                       AND ORDER

AMCI HOLDINGS, INC., et al.,

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendants move to partially dismiss the Third Amended Complaint (the "TAC") pursuant to Rule 12(b)(6), Fed. R. Civ. P. The TAC withdrew four claims that sounded in fraud and amended a claim of fraudulent transfer brought under section 276 of the New York Debtor and Creditor Law to assert liability against all defendants, on the basis that they are allegedly the alter egos and/or successors in interest to non-party Steel Based Trade AG ("SBT"). Like the prior versions of the complaint, the TAC also seeks to enforce an arbitration award against all defendants, asserting that defendants are alter egos and/or successors in interest of SBT.

        Defendants urge that the amendment of the fraudulent transfer claim amounts to a new factual theory of recovery and does not relate back to the initial complaint or the first or second amended complaints for statute of limitations purposes. They urge that, as to all defendants but Prime Carbon and AMCI Holdings, the fraudulent transfer claim is barred by New York's six-year limitations period for claims sounding in fraud, see CPLR 213(8), and should be dismissed as untimely.

        Because the initial complaint and all successive amendments consistently alleged that defendants were alter egos and/or successors in interest to SBT, and that their interrelated

ownership facilitated the transfer of assets out of SBT in an effort to thwart or frustrate an arbitration award, the Court concludes that the TAC's amendments relate back to the initial complaint. Defendants' motion will therefore be denied.

The Court reviews plaintiffs' claims and the procedural history of this case only to the extent that they are relevant to whether the TAC relates back to prior pleadings pursuant to Rule 15, Fed. R. Civ. P. Familiarity with the factual background to the parties disputes is assumed.

On April 18, 2013, plaintiffs filed a six-count complaint in this action seeking to enforce an arbitration award (the "Award") issued against SBT by the International Chamber of Commerce Paris (the "ICC"). (Docket # 1.) They alleged that the Award was enforceable against Hans Mende, Fritz Kundrun, Prime Carbon and Primetrade USA as alter egos of SBT, that defendants AMCI, AMCI Holdings and K-M were liable because defendants Mende and Kundrun were their alter egos, and that Prime Carbon is SBT's successor in interest. (Compl't ¶¶ 109-26.) All corporate defendants, as well as SBT, were alleged to be under the domination and control of Mende and Kundrun. (Id.) Plaintiffs alleged that "[e]ach of the Defendants should be determined to be liable for the arbitration award based upon their conduct and cannot insulate themselves from liability based upon their corporate entities' veils." (Id. ¶ 1.) It alleged that all defendants' participation in a "scheme" to defraud SBT creditors, made detailed allegations about the corporate defendants' intertwined ownership, alleged that defendants held themselves out and operated "as one entity," and alleged that the individual defendants had a history of "us[ing] shell companies to avoid liabilities against them and their alter ego companies." (Compl't ¶¶ 1, 3, 8, 43, 86-89, 98-103.) The initial complaint asserted one claim to enforce the Award against all defendants and five claims sounding in fraud, including a claim of

common law fraud against all defendants and a claim of fraudulent transfer under section 276 of the New York Debtor and Creditor Law against Prime Carbon and AMCI Holdings only. (Id. ¶¶ 104-54.)

Plaintiffs thereafter filed an Amended Complaint (Docket # 47) and a Second Amended Complaint (Docket # 125), which also alleged that the defendants were alter egos and/or successors in interest of SBT. The First Amended Complaint alleged that "[p]laintiffs are entitled to pierce the corporate veil to enforce the Award against Mende, Kundrun, and each of the Corporate Defendants as alter egos of SBT . . . ." (1st Am. Compl't ¶ 9; see also id. ¶¶ 1, 25, 45, 93-124.) The Second Amended Complaint likewise described defendants as "SBT's alter egos and/or successors . . . ." (2nd Am. Compl't ¶ 1; see also id. ¶¶ 10-11, 28, 97-122, 133 ("At all relevant times, Mende, Kundrun, and the Corporate Defendants, including AMCI Holdings, Primetrade USA, and Prime Carbon, were the alter egos of SBT, and therefore are liable for the Award rendered against SBT.").) In concluding that plaintiffs had plausibly stated a claim for relief, the Second Circuit described this case as "an action to enforce [plaintiffs'] foreign arbitral award in the district court for the Southern District of New York, seeking to enforce the award against SBT's 'alter egos' and 'successor[s]-in-interest' as well as to recover on state law fraud claims." CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 68 (2d Cir. 2017).

Plaintiffs filed the Third Amended Complaint or TAC on October 17, 2019. (Docket # 339.) Count One seeks to enforce the ICC's arbitration award against all defendants pursuant to the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. (TAC ¶¶ 154-63.) Count Two alleges fraudulent transfer against all defendants pursuant to sections 276 and 276-a of the New York Debtor and

Creditor Law; that claim was previously brought against only Prime Carbon and AMCI Holdings. (TAC ¶¶ 164-71; Opp. Mem. App'x A.)[1]

According to defendants, the TAC "fundamentally alters the factual allegations" by recasting all defendants as successors in interest and alter egos of defendant SBT. (Def. Mem. 1.) Defendants urge that the amendments advance a new "factual story" that does not relate back to plaintiffs' prior pleadings, and that, to the extent its claims are premised on defendants' status as alter egos and/or successors in interest, the amended claims should be dismissed as untimely. Defendants acknowledge that plaintiffs had previously alleged that they are alter egos of SBT, but characterize those past allegations as "overly generalized or peripheral . . . ." (Def. Mem. 10.).

Claims added by amendment relate back to the original date of filing if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Rule 15(c)(1)(B), Fed. R. Civ. P. "The purpose of Rule 15(c)'s relation-back provision is 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 916 F.3d 116, 128 (2d Cir. 2019) (quoting Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010)). "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.' Where the amended complaint does

---

[1] The TAC withdrew claims asserting fraud and conspiracy to defraud brought against all defendants; constructive fraudulent transfer against Prime Carbon and AMCI Holdings; and aiding and abetting fraudulent transfer against Hans Mende and Primetrade USA. (See id.)

not allege a new claim but renders prior allegations more definite and precise, relation back occurs." Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006) (quoting Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir. 1999)). "For example, where an initial complaint alleges a 'basic scheme' of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a 'natural offshoot' of that scheme." Slayton, 460 F.3d at 228.

The TAC's allegations are consistent with plaintiffs' prior assertions of the defendants' intertwined relationships and their status as alter egos of SBT, and is a "natural offshoot" of the scheme alleged from the commencement of this action. See id. A redline comparison of the Second and Third Amended Complaints reflects some modest stylistic changes to plaintiffs' alter-ego allegations – for example, referring to "Corporate Defendants" instead of listing each entity individually in separate paragraphs. (Opp. Mem. App'x A at pp. 28-29.) The TAC alleges that all corporate defendants transferred assets out of SBT in an effort to thwart or frustrate the ICC Award. (Id. at 31, 36.) These allegations are consistent with plaintiffs' longstanding allegations that the defendants worked in harmony while under the control of Mende and Kundrun to transfer assets out of SBT in an effort to frustrate or thwart enforcement of the ICC's Award. The acts and ownership relationships alleged in the TAC's fraudulent transfer claim are highly similar to the prior, now-withdrawn claims against all defendants for fraud and conspiracy to commit fraud. (See 2nd Am. Compl't ¶¶ 178-92.)

There is no merit to defendants' argument that the TAC has raised "an entirely distinct set of factual allegations" from earlier versions of the complaint. (See Def. Mem. 8-11.) The addition of all defendants to the fraudulent transfer claim, and the supporting allegations about the defendants' status as alter egos and successors in interest, are consistent with "the

general fact situation alleged in the original pleading" and "renders prior allegations more definite and precise . . . ." Slayton, 460 F.3d at 228. The Court therefore concludes that the TAC "relates back" to the initial complaint pursuant Rule 15(c).

Defendants' motion is therefore DENIED. (Docket # 361.) The Clerk is directed to terminate the motion.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
April 6, 2020