**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

CBF INDÚSTRIA DE GUSA S/A, DA TERRA
SIDERÚRGICA LTDA, FERDUMAR – FERRO GUSA
DO MARANHÃO LTDA, FERGUMINAS
SIDERÚRGICA LTDA, GUSA NORDESTE S/A,
SIDEPAR – SIDERÚRGICA DO PARÁ S/A, and
SIDERÚRGICA UNIÃO S/A,

                          *Plaintiffs*,

                         - vs -

AMCI HOLDINGS, INC., AMERICAN METALS &
COAL INTERNATIONAL, INC., K-M INVESTMENT
CORPORATION, PRIME CARBON GMBH,
PRIMETRADE, INC., HANS MENDE, AND FRITZ
KUNDRUN,

                       *Defendants*.

---------------------------------------------------------------------X

Civil Action No. 13-2581-PKC-JLC

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(e)**

Adam K. Grant
Christopher A. Klimmek
Gregory R. Bruno

**DAY PITNEY LLP**
605 Third Avenue, 31st Floor
New York, New York 10158
Tel: 212-297-5800
Fax: 212-916-2940
agrant@daypitney.com
cklimmek@daypitney.com
gbruno@daypitney.com

*Counsel for Plaintiffs*

Dated: September 25, 2020

106195841

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 2

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

    V.    Defendants Cover Up The Missing ESI ............................................................... 7

    VI.   Discovery On Discovery Reveals Additional Critical Data Sources and Confirms ESI Has Been Permanently Lost ...................................................................... 12

LEGAL STANDARDS ............................................................................................................ 14

ARGUMENT ........................................................................................................................... 14

    I.    The Threshold Requirements of Rule 37(e) Have Been Met ............................. 14

        A.   Defendants Should Have Preserved the Email of Relevant Custodians ...................... 15

        ████████████████████████████████████ ...................... 17

        C.   The Missing Emails Cannot Be Entirely Restored or Replaced ................................... 19

    II.   Rule 37(e)(1) Sanctions Are Warranted Because Defendants' Spoliation Has Prejudiced Plaintiffs ............................................................................................. 20

    III.  Rule 37(e)(2) Sanctions Are Warranted Because Defendants Intended to Deprive Plaintiffs of Use of the Missing Emails in this Litigation ................................... 23

        A.   Defendants' Conscious Dereliction Of Their Known Duty To Preserve Shows An Intent To Deprive ......................................................................................... 23

        ████████████████████████████████████████████████

        C.   Defendants Repeatedly Misled Plaintiffs and this Court to Conceal their Spoliation .. 28

    IV.  Harsh Sanctions Are Necessary To Remedy The Prejudice To Plaintiffs And Deter Defendants' Misconduct .......................................................................... 31

CONCLUSION ........................................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps.Ins. Co.*,
No. 15 Civ. 2926, 2019 WL 5694256 (E.D.N.Y. July 22, 2019) ...........................................22

*CAT3, LLC v. Black Lineage, Inc.*,
164 F. Supp. 3d 488 (S.D.N.Y. 2016)........................................................20, 22, 26, 27, 33, 34

*Cruz v. G-Star Inc.*,
No. 17 Civ. 7685, 2019 WL 4805765 (S.D.N.Y. Sept. 30, 2019) ..........................................19

*Culhane v. Wal-Mart Supercenter*,
364 F. Supp. 3d 768 (E.D. Mich. 2019)..................................................................................23

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
No. 14 Civ. 1254, 2019 WL 6838672 (S.D.N.Y. Dec. 16, 2019)............................................22

*Global Material Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.*,
No. 12 Civ. 1851, 2016 WL 4765689 (N.D. Ill. Sept. 13, 2016) .....................................30, 31

*GN Netcom, Inc. v. Plantronics, Inc.*,
No. 12 Civ. 1318, 2016 WL 3792833 (D. Del. July 12, 2016)................................................33

*Great Am. Ins. Co. of N.Y. v. Castleton Commodities Int'l LLC*,
No. 15 Civ. 3976, 2015 WL 6955176 (S.D.N.Y. Nov. 3, 2015) ............................................15

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
880 F.3d 620 (2d Circ. 2018)..................................................................................................34

*Leidig v. Buzzfeed, Inc.*,
No. 16 Civ. 542, 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017)........................................15, 33

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
No. 15 Civ. 9363,
2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ..................14, 15, 16, 17, 18, 19, 20, 22, 32, 33

*Moody v. CSXTransp., Inc.*,
271 F. Supp.3d 410 (W.D.N.Y. 2017) ...............................................................................24, 33

*Ottoson v. SMBC Leasing and Finance, Inc.*,
268 F.Supp.3d 570 (S.D.N.Y. 2017).................................................................................23, 32, 33

*In re Petters Co., Inc.*,
606 B.R. 803 (Bankr. D. Minn. 2019) ...............................................................................22, 30

*Pizzella v. Liberty Gas Station & Convenience Store, LLC*,
    410 F. Supp. 3d 425 (N.D.N.Y. 2019) ..................................................................16

*Raymond v. City of N.Y.*,
    15 Civ. 6885, 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020) ...................................20

*Resnik v. Coulson*,
    No. 17 Civ. 676, 2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019), *report and recommendation
    adopted,* 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019) ...................................27, 33

*Rivera v. Sam's Club Humacao*,
    386 F. Supp. 3d 188 (D.P.R. 2018) .......................................................................31

*Roc Nation LLC v. HCC Int'l Ins. Co., PLC*,
    No. 19 Civ. 554, 2020 WL 1970697 (S.D.N.Y. Apr. 24, 2020) ............................16

*Ryan v. Rock Grp., NY. Corp.*,
    No. 18 Civ. 2600, 2019 WL 6841874 (S.D.N.Y. Dec. 16, 2019) ...........................22

*Schwarz v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 08 Civ. 6486, 2009 WL 3459217 (S.D.N.Y. Oct. 27, 2009) .....................15, 16

*Siani v. State Univ. of N.Y. at Farmingdale*,
    No. 09 Civ. 407, 2010 WL 3170664 (E.D.N.Y. Aug. 10, 2010) ............................15

*Tomassini v. FCA US LLC*,
    No. 14 Civ. 1226, 2020 WL 1938834 (N.D.N.Y. Apr. 22, 2020) ..........................16

*Ungar v. City of N.Y.*,
    329 F.R.D. 8 (2018) .............................................................................................20

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17 Civ. 00939, 2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ....................15, 16

*Yoe v. Crescent Sock Co.*,
    No. 15 Civ. 3, 2017 WL 5479932 (E.D. Tenn. Nov. 14, 2017)..............................34

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) .....................................................................15, 17

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) .................................................16, 17, 18, 19, 24

**Rules**

Fed. R. Civ. P. 37 ............................................................................................14, 22, 32

## <u>PRELIMINARY STATEMENT</u>

There is "clear and convincing" direct, circumstantial, and computer forensic evidence that Defendants Hans Mende, Fritz Kundrun, AMCI Holdings, Inc. ("AMCI Holdings"), American Metals & Coal International, Inc. ("American Metals"), and Primetrade, Inc. ("Primetrade") spoliated tens of thousands of emails from critical custodians well after their duty to preserve began. For the past two years, Defendants have used half-truths, legerdemain, and outright deception to prevent the Plaintiffs and the Court from discovering Defendants' spoliation and its extent.

Despite anticipating litigation in late 2009 or early 2010, despite the filing of this action in April 2013, and despite learning of critical missing electronically stored information ("ESI") in May 2018, Defendants ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ As a result of Defendants' conscious disregard of their duty to preserve, and the resulting destruction of ESI, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Defendants' knowing and intentional spoliation, coupled with their serial efforts to mislead Plaintiffs and the Court, merits the harshest of sanctions, both to cure the serious prejudice to Plaintiffs' case, and also to deter Defendants and others from future spoliation. Plaintiffs accordingly seek their costs, terminating sanctions against certain Defendants, and adverse inferences and evidentiary preclusions against the other Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[1] Plaintiffs assert fraudulent transfer and alter ego claims arising from two transactions designed to prevent them from enforcing an ICC Award against SBT: (1) a transfer of assets and liabilities from SBT to Prime Carbon in December 2009 (the "Transfer Agreement"); and the transfer of Primetrade stock from Prime Carbon to AMCI Holdings in January 2010 (the "SPA"). (*See* Third Amended Complaint, ECF No. 339.) The evidence of Defendants' scheme to hinder, delay, and defraud Plaintiffs has been set forth in Plaintiffs' prior submissions to this Court, *see, e.g.,* ECF Nos. 202, 237, 238, has been recognized as substantial in opinions of this Court, *see, e.g.,* ECF Nos. 286, 295, and will not be repeated here.

[2] Cited exhibits are appended to the Declaration of Adam Grant. Given the complexity of the issues and the dispositive relief sought, Plaintiffs have reproduced in the Declaration relevant excerpts from the exhibits thereto, organized by subject matter.

[3] Annexed hereto as Appendix A is a chart identifying the key individuals referenced in this motion.



Americus subsequently appeared in this action on behalf of Defendants. (*See* ECF Nos. 33, 75.)

**A. Background.**

---

[4] Americus represented another AMCI entity only six months prior in defending a U.S. fraudulent transfer and alter ego action, arising from another foreign transaction. (*See* Complaint in *Adani Exports Ltd. v. AMCI (Export) Corp., et al.*, No. 2:05CV00304 (W.D. Pa.), ECF No. 47; Ex. 73, at 1.)

[5] In interrogatory responses dated September 22, 2020, Defendants claimed that Wood' s ESI was never archived on the Connecticut Server, they do not know whether his emails were ever archived anywhere, and they "are not definitively aware of any specific explanation for [their] absence." (Ex. 75.)





**A. Defendants Begin Document Collection.** Defendants successfully delayed the start of discovery until February 2018. (*See* ECF No. 41, 104, 107, 111.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

**D. The Mende Gap.** ██████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

██   ██████████████████████████████████████████

**A. The Install PST.** ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[10] As used herein, "custodial" email or PST refers to email or PST stored in a particular individual's email box.

██ ██████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**B. The Kundrun PSTs.** [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## V.    Defendants Cover Up The Missing ESI

**A. The Joint Discovery Protocol.** After protracted negotiations (*see* Grant Dec. ¶¶ 128-33), Defendants agreed to a Stipulated Discovery Protocol and Order filed on June 20, 2018, in which the parties "represent[ed] that they believe that they have taken reasonable steps to ensure the preservation of information that may be discoverable, but that investigation and retrieval efforts are continuing." ECF No. 119 § B.6. Defendants did not disclose to Plaintiffs or the Court

that they had, ███████████████████████████████████████████████████

███████████████████████████████    *See supra*, at 4-6.

**B. Defendants' Opposition to the Plaintiffs' U.S. Motion to Compel.** Shortly after Defendants claimed to have completed their U.S. Production, Plaintiffs raised concerns about the lack of documents produced from certain custodians (Grant Dec. ¶¶ 186-88.) Plaintiffs served a motion to compel in January 2019 seeking, *inter alia*, transparency into Defendants' preservation and collection of ESI in the US, and accusing Defendants of "fail[ing] to preserve relevant information." (ECF No. 167, at 15, 20.)

Two days before Defendants' opposition was due, ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████ Defendants' opposition denied any preservation problem, stating: (i) "Plaintiffs have not credibly established that Defendants' productions supposedly are deficient," (ii) "Plaintiffs' Assertion That the U.S. Defendants Have Failed to Preserve ESI[] Is Unsubstantiated and Also a Pretext to Obtain 'Discovery on Discovery' To Which They are Not Entitled," (iii) "Plaintiffs' focus on the number of documents produced . . . is misguided," and (iv) Defendants' European production would address any gaps in the U.S. production. (ECF No. 172, at 22-24.)

**C. Defendants' Opposition to the Plaintiffs' European Motion to Compel.** Shortly after Defendants claimed completion of their European production, (Grant Dec. ¶¶ 192-93), Plaintiffs served their European motion to compel arguing, *inter alia*, that the European production confirmed Defendants had failed to preserve, collect, or produce documents from Mende,

Kundrun, and other custodians. (ECF No. 185.) Just two days before that opposition was due,



The day before serving the opposition,

But the opposition did not disclose this fact, or that

(ECF No. 190.) Instead, Defendants engaged in numerical

legerdemain to mislead Plaintiffs and the Court, boasting they had:

> [C]ollected and reviewed from the mailbox server in Connecticut . . . 19.3 gigabytes of .psts from Mende's e-mail mailbox and 7.5 gigabytes of .psts associated with Kundrun's e-mail mailbox, which combined contained over 111,901 documents. Defendants hired contract review attorneys to review every single one of the 111,901 .psts at great expense and effort. Clearly, Defendants made entirely reasonable efforts to comply with their discovery obligations, and if anything, went above and beyond.

*Id.* at 12. While acknowledging that some e-mails for Mende and Kundrun had not been produced in the U.S., Defendants misleadingly attributed this to the use of different document review teams in the U.S. and Europe. *Id.* at 10.

, Defendants attempted to trivialize Plaintiffs' concerns, suggesting that they were demanding "perfection" and "pristine" preservation. Id. at 20. In conclusion, Defendants asserted: "Plaintiffs' requests for discovery-on-discovery lack a legitimate evidentiary basis, are without merit, and should be denied." *Id.*

███████████████████████████████████████████████████

████████████████████████  Defendants filed their opposition on March 29 with no

further disclosure to Plaintiffs or the Court of any of these critical facts.[12] (ECF No. 190.)

**D. Defendants Finally Admit to the Mende Gap.** On April 1, 2019, Plaintiffs wrote to

Defendants asserting that they "did not search or preserve Mende's and Kundrun's mailboxes,"

and accusing them of "attempt[ing] to hide that fact from Plaintiffs and the Court." (*Id.* ¶ 226.)

Following a flurry of correspondence and further threats of motion practice, Defendants finally

provided an obscure, word-salad disclosure implying that they had no custodial emails from

Mende from September 1, 2009 to October 2011. (*Id.* ¶¶ 227-29.) Although their oppositions

were *sub judice*, Defendants did not reveal this critical fact to the Court until the parties' May 6th

telephonic status conference. (*Id.* ¶ 323.)



---

[12] Pursuant to Judge Sweet's order, the parties would serve their motion papers only on the parties; these papers were not filed with the Court until the motion was fully briefed. (Grant Dec. ¶ 189.)

**F. Ricoh's Investigation.** In the May 6th teleconference, Defendants disclosed they had retained an ESI consultant (Ricoh), and argued it should be given time to investigate missing the ESI before the Court ruled on Plaintiffs' request for discovery-on-discovery. (Grant Dec. ¶ 215.) In their May 24, 2019 letter to the Court, Defendants disclosed Ricoh's discovery of the Install PST, and stated that Ricoh would investigate "the question as to why there is a . . . temporal gap in . . . Mr. Mende's archived emails." (ECF No. 230, at 3.) ██████████████████████ ███████████████████████████, Defendants stated they "are not currently aware of any Discovery Time Period temporal gap between archived emails for any Defendant custodian other than Mr. Mende. (*Id.*) They further stated that Ricoh "is in the process of a follow-on analysis of this question." (ECF No. 230, at 3.) Defendant also told the Court that they "were not previously aware of any temporal gap in the United States of Mr. Mende's archived custodian emails." (*Id.* at 2; *but see supra*, at 6.)

On July 12, 2019, Defendants told the Court Ricoh had completed its "document search/recovery efforts," and claimed that Ricoh had: (1) "not located in the United States" any Mende archived emails for the "period of 10/1/09-9/30/11," (2) found "no evidence . . . which explains the lack of custodian e-mails for Hans Mende;" and (3) not found "evidence of their purposeful deletion." (ECF No. 282.)

In response, Plaintiffs requested in September 2019 information about the PSTs Ricoh had located and when they were last modified. (Grant Dec. ¶¶ 218, 220-21.) ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████

After Defendants provided a copy of Ricoh's report (Ex. 52), Plaintiffs deposed its

author, David Hendershott (Ex. 53). ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ ███████████

████████████████████████████████████████████████████ ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

## VI.    Discovery On Discovery Reveals Additional Critical Data Sources and Confirms ESI Has Been Permanently Lost

*A. Additional ESI Discovered.* On December 12, 2019, the Court issued its Forensic Protocol Order, granting discovery-on-discovery and specifying the logistics of Plaintiffs' access to Defendants' ESI. (ECF No. 379.) █████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

13 █████████████████████████████████████████████████████████
█████████████████████████████████████████

14 █████████████████████████████████████████████████████████
██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

**B.  Capsicum  Confirms  ESI  Is  Lost  Permanently.**  ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

106195841

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████

## LEGAL STANDARDS

Rule 37(e) authorizes the Court to impose two types of sanctions for a party's failure to preserve relevant ESI. *First*, "upon finding prejudice to another party from loss of the information," the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). *Second*, "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may:

(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2). As demonstrated below, both types of sanctions are warranted here.

## ARGUMENT

### I.  The Threshold Requirements of Rule 37(e) Have Been Met

To impose any sanction under Rule 37(e), the Court must first find ESI (1) "should have been preserved in the anticipation or conduct of litigation"; (2) "was lost because both Defendants and their counsel failed to take reasonable steps to preserve it"; and (3) "cannot be entirely restored or replaced." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15 Civ. 9363, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018). All three elements are met here.

## A.      Defendants Should Have Preserved the Email of Relevant Custodians

The "duty to preserve is based on a two-part inquiry: (1) when did the duty to preserve arise, and (2) what evidence was the party obligated to preserve?" *Id.*

**1.** ***Defendants' Duty to Preserve.*** The duty to preserve "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).[15] While this duty arises no later than when a lawsuit is filed, it often arises prior to the commencement of litigation. *Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542, 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Courts routinely find the duty to preserve is triggered under such circumstances. *See, e.g., Schwarz v. FedEx Kinko's Office & Print Servs., Inc.,* No. 08–CV–6486, 2009 WL 3459217, at *6 (S.D.N.Y. Oct. 27, 2009).[16] Moreover, the Defendants' assertion of work product, joint defense, and common interest protections dating back to September 2009, *see supra*, at 2-3, confirms they reasonably anticipated litigation (triggering the duty to preserve) at that time. *See, e.g., Waymo LLC v. Uber Techs., Inc.*, No. 17 Civ. 00939, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018) (holding that when a party "withhold[s] evidence" based on a "joint-defense and common-interest privilege[]," they cannot claim they did not have a "duty to preserve evidence").

---

[15] "[T]he 2015 amendments to Rule 37(e) did not change previously existing federal standards concerning when a party's duty to preserve attaches and what evidence a party is obligated to preserve." *Lokai*, 2018 WL 1512055, at *9 n.8 (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).

[16] *See also Siani v. State Univ. of N.Y. at Farmingdale,* No. 09–CV–407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010); *Great Am. Ins. Co. of N.Y. v. Castleton Commodities Int'l LLC*, No. 15 CIV. 3976, 2015 WL 6955176, at *3 (S.D.N.Y. Nov. 3, 2015).



there can be no doubt that Defendants'
duty to preserve arose no later than March of 2010. *See Schwarz*, 2009 WL 3459217, at *6; *Roc
Nation LLC v. HCC Int'l Ins. Co., PLC*, No. 19 CIV. 554, 2020 WL 1970697, at *3 (S.D.N.Y.
Apr. 24, 2020); *Waymo LLC,* 2018 WL 646701, at *16.

 *2. The Custodians with Missing ESI Were Obviously Central to this Case.* Once they
anticipated litigation, Defendants had "a duty to preserve what [they] kn[ew], or reasonably
should [have] know[n], is relevant in the action, is reasonably calculated to lead to the discovery
of admissible evidence, [or] is reasonably likely to be requested during discovery." *Lokai*, 2018
WL 1512055, at *10 (internal quotation marks and citation omitted); *Pizzella v. Liberty Gas
Station & Convenience Store, LLC*, 410 F. Supp. 3d 425, 431 (N.D.N.Y. 2019) (citing *Zubulake*,
220 F.R.D. at 217–18). Once a party anticipates litigation, it or its counsel must undertake a
reasonable investigation to identify custodians that are likely to possess relevant documents.
*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). In evaluating whether the
missing ESI was relevant, "[t]he court's role . . . is limited" and is designed solely to insure the

party seeking the sanction for spoliation has "adduced enough evidence of the contents of the missing materials such that a reasonable juror could find in its favor." *Tomassini v. FCA US LLC*, No. 314 Civ. 1226, 2020 WL 1938834, at *4 (N.D.N.Y. Apr. 22, 2020) (quoting *Poux v. Cty. of Suffolk*, No. 09-CV-3081, 2012 WL 1020302, at *19 (E.D.N.Y. Mar. 23, 2012)).

 Even a cursory investigation would have revealed the need to preserve these custodians' ESI.

Since *Zubulake*, the law in the Southern District has been clear: "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218; *see also Lokai*, 2018 WL 1512055, at *11. But this is just the beginning of the duty to preserve. "Once a 'litigation hold' is in place, a party and [its] counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold' . . . ." *Zubulake*, 229 F.R.D. at 432; *see also Lokai*, 2018 WL 1512055, at *10. To do so, "counsel must become

fully familiar with her client's document retention policies, as well as the client's data retention architecture," *Zubulake*, 229 F.R.D. at 432, should "speak[] with [IT] personnel," and "communicat[e] with the 'key players' in the litigation, in order to understand how they stored information." *Id.* Critically, "it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." *Id.* Instead, a party and their counsel "must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Id.*; *see also Lokai*, 2018 WL 1512055, at *11.

████████████████████████████████████████████████████████

███████████████████████████████████████████████ ██ ████████

██████████████████████████████████████████, settled law requires a party anticipating litigation to *change* its retention practices by notifying custodians of relevant information and taking affirmative steps to ensure that relevant documents are preserved. *Zubulake*, 229 F.R.D. at 432. It also "is *not* sufficient" to simply "notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." *Id.*; *see also Cruz v. G-Star Inc.*, No. 17 Civ. 7685, 2019 WL 4805765, at *12 (S.D.N.Y. Sept. 30, 2019) (holding that counsel's advice to client "of the need to preserve evidence" and "as to what documents might be necessary in the litigation" was insufficient). Instead, "[c]ounsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Zubulake*, 229 F.R.D. at 432. ████████████████████████

████████████████████████████████████████████

### C.    The Missing Emails Cannot Be Entirely Restored or Replaced

The missing emails from the custodial files of Mende, Kundrun, Fleskes, and Wood cannot be "entirely restored or replaced." *Lokai*, 2018 WL 1512055, at *9. Both Defendants and Plaintiffs have retained forensic experts to attempt to locate and restore the missing emails. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

██ ████████████████████████████████████████████████████████



At best, Defendants have been able to find a fraction of the missing emails because they were sent to or from custodians who did manage to preserve their email, or because they were incidentally preserved ████████████████. But this merely shows that Defendants "are the gang that couldn't spoliate straight." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). Defendants cannot escape spoliation sanctions unless they have recovered *all* the missing ESI – a showing they cannot come close to making. *See Lokai*, 2018 WL 1512055, at *12.

## II.   Rule 37(e)(1) Sanctions Are Warranted Because Defendants' Spoliation Has Prejudiced Plaintiffs

Rule 37(e)(1) sanctions are triggered where, in addition to the threshold requirements of Rule 37(e), the Court finds there has been "'prejudice . . . from loss of the information.'" *Lokai*, 2018 WL 1512055, at *12 (quoting *Leidig*, 2017 WL 6512353, at *12). A showing that spoliated ESI likely would support a party's claims is sufficient to show prejudice.[18] Given Defendants' discovery misconduct, and their failure to take any steps to ensure compliance with their basic

---

[18] Courts have developed two competing views of prejudice. Under one, "'prejudice' may be taken to mean merely that the evidence is probative, similar to the concept of relevance under Fed. R. Evid. 401." *Ungar v. City of N.Y.*, 329 F.R.D. 8 (E.D.N.Y. 2018). "Under the alternative view, prejudice may require proof that the evidence was not only probative, but that it would affirmatively support the movant's claim." Courts in the Second Circuit generally, but not always, "require some proof of prejudice in the latter sense before sanctions will issue." *Id.* Under either standard, Plaintiffs have suffered prejudice.

106195841
.

preservation obligations, they should bear the burden of disproving any prejudice to Plaintiffs.[19]
But regardless of who bears the burden, Plaintiffs plainly have been prejudiced by Defendants'
spoliation.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[19] *See Raymond*, 2020 WL 1067482, at *11 ("The noncompliant party bears the burden to demonstrate that the other parties did not suffer any prejudice from spoliation."); *see also Lokai*, 2018 WL 1512055, at *12 (Rule 37(e) "'does not place a burden of proving or disproving prejudice on one party or the other," leaving it to the Court's "discretion to determine how best to assess prejudice in particular cases.'" *Id.*



In fact, the emails of Mende, Kundrun, Wood, and Fleskes recovered from other custodians provide some of the strongest evidence supporting Plaintiffs' case.

The Court relied on similarly damning emails (*see* ECF Nos. 202, 237, 238) preserved in Europe to grant an *ex parte* order of attachment against AMCI Holdings and Mende (ECF 286, at 2 (finding "it is probable that Plaintiffs will succeed on the merits of [their] claims)), and a crime-fraud ruling (*See* ECF 295, at 53-54) (finding "that plaintiffs have established probable cause to believe that SBT and defendants committed fraudulent actions and intended to defraud plaintiffs.")). It is highly improbable these emails, preserved by happenstance, are the only emails establishing Defendants' alter-ego liability, and

---

[20] The valuation of Primetrade is also directly relevant to Defendants' twenty-first affirmative defense that AMCI Holdings purchased Primetrade for "fair value." (*See* ECF 427, at 35).

knowing participation in a scheme to defraud Plaintiffs.[21] Defendants' spoliation not only has deprived Plaintiffs of highly probative and favorable evidence, but also has forced Plaintiffs to expend significant time and expense trying to restore the missing emails or confirm their absence. *See Ryan v. Rock Grp., NY Corp.*, No. 18 Civ. 2600, 2019 WL 6841874, at *5 (S.D.N.Y. Dec. 16, 2019) ("By depriving the Plaintiff of discovery, Defendants have prejudiced [him] by making it both difficult and unnecessarily expensive for him to prosecute his case").

## III.    Rule 37(e)(2) Sanctions Are Warranted Because Defendants Intended to Deprive Plaintiffs of Use of the Missing Emails in this Litigation

Rule 37(e)(2) reserves the harshest sanctions for a spoliating party who "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see also Lokai*, 2018 WL 1512055, at *8; *CAT3, LLC,* 164 F. Supp. 3d at 499. Intent to deprive can be established by direct or circumstantial evidence. *See, e.g., CAT3, LLC*, 164 F. Supp. 3d at 500; *In re Petters Co., Inc.*, 606 B.R. 803, 827-30 (Bankr. D. Minn. 2019). "An intent to deprive can be found either from a conscious act of destruction or a 'conscious dereliction of a known duty to preserve electronic data.'" *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 Civ. 1254, 2019 WL 6838672, at *5 (S.D.N.Y. Dec. 16, 2019) (quoting *Ungar*, 329 F.R.D. at 13); *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15 Civ. 2926, 2019 WL 5694256, at *11 (E.D.N.Y. July 22, 2019).

### A.    Defendants' Conscious Dereliction Of Their Known Duty To Preserve Shows An Intent To Deprive

Defendants anticipated litigation in late 2009 or early 2010, and the first complaint in this action was filed in April 2013. ███████████████████████████████

---

[21] This remains true even if the missing emails would merely add to the already produced evidence of Defendants' misconduct. *See CAT3, LLC*, 164 F. Supp. 3d at 497 (holding that even where spoliated ESI was "cumulative to some extent," loss was still prejudicial to plaintiff because Plaintiffs' "case against Defendants is weaker when it cannot present the overwhelming quantity of evidence it otherwise would have to support its case." (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)).



*Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F.Supp.3d 570, 582-83 (S.D.N.Y. 2017) (collecting cases); *see also Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773-74 (E.D. Mich. 2019). In *Ottoson v. SMBC Leasing and Finance, Inc*., the court found "intent to deprive" where direct and circumstantial evidence established that relevant emails once existed, and the plaintiff failed to take any reasonable steps to preserve them. 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017). The court concluded the only logical inferences to be drawn were that plaintiff: "(a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession or has failed to produce them." *Id*. The court then held that "[a]ny of these scenarios satisfies the requisite level of intent" under Rule 37(e)(2). *Id*. Accordingly, the facts set forth herein provide an ample basis for the Court to find that the ESI missing here was deleted with the "intent to deprive" Plaintiffs of the evidence.

An inference of intent to deprive is particularly warranted here, ███████████

█████████████████████████████████████████

█████████████████████████████████████████

Such egregious disregard for basic and long settled preservation requirements, *see, e.g.,* *Zubulake*, 229 F.R.D. at 432, is so "stunningly derelict as to evince intentionality," *Moody v. CSXTransp., Inc.*, 271 F. Supp.3d 410, 431 (W.D.N.Y. 2017) (inferring "intent to deprive" where defendants allowed data to be overwritten knowing they had a duty to preserve it, destroyed a laptop containing relevant ESI without confirming that it had been preserved in another repository, and failed to make any effort over the course of the litigation to confirm that the data had been properly preserved). In *Moody,* as here, even if the original deletion of the data were to be excused, "defendants repeated failure over a period of years to confirm that the data had been properly preserved despite its ongoing and affirmative Rule 11 and Rule 26 obligations . . . is so stunningly derelict as to evince intentionality." *Id*. at 432.







***3. Defendants' Conduct Supports a Finding of Intent to Deprive.*** Courts have found an "intent to deprive" under circumstances similar to those detailed above. For example, in *CAT3, LLC v. Black Lineage, Inc.*, the court found "intent to deprive" where the moving parties' expert credibly found the deletion and replacement of email was "the result of intentional human action, and not of an automatic or inadvertent computer process." 164 F.Supp.3d at 499-500. Magistrate Judge Francis found that, in light of the "benefit [plaintiffs] would derive in this case from" the deleted and altered ESI and the "absence of any other credible explanation" for plaintiffs'

misconduct, it "was more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation." *Id.* █████████████████████████████

█████████████████████████████████████████████████ "an automatic or inadvertent computer process." *CAT3*, 164 F.Supp.3d at 499-500; *see also Resnik v. Coulson*, No. 17 Civ. 676, 2019 WL 2256762, at *13 (E.D.N.Y. Jan. 4, 2019), *report and recommendation adopted,* 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019).

Defendants have already gained, and will continue to seek, a significant benefit from the destruction of this critical evidence, which enables their witnesses to deny or minimize their knowledge of the key transactions at issue. (*See infra*, at 31-32.) And Defendants have provided no credible explanation for deletion of the missing emails. Given the benefit that Defendants would have derived had they been able to "spoliate straight," *CAT3, LLC*, 164 F. Supp. 3d at 497, the Court should infer that Defendants intended to deprive Plaintiffs of the use of these documents in this litigation.

**C.    Defendants Repeatedly Misled Plaintiffs and this Court to Conceal their Spoliation.**

Defendants' intent to deprive is further demonstrated by their repeated use of falsehoods, word-play, and lies (both by act and by omission) to conceal their spoliation from Plaintiffs and this Court.

*1.* In June 2018, Defendants represented that "they believe[d] that they have taken reasonable steps to ensure the preservation of information that may be discoverable," (ECF No. 119, § B.6), ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████



*2.* In their January 2019 opposition to Plaintiff's motion to compel, Defendants claimed that there was no evidence that they had failed to preserve relevant ESI (ECF No. 172), ███

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*3.* In their March 2019 opposition, Defendants went even further, falsely claiming that Plaintiffs' concerns about Defendants' failure to preserve were entirely unfounded (ECF No. 190 at 18), and employing numerical legerdemain to trick the Court into believing that nothing was amiss. ███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Defendants allowed their deceptive opposition to be filed with the Court. And when they finally disclosed to the Court the gap in Mende's email and their retention of Ricoh, Defendants misleadingly assured the Court that they had not previously known of the gap. (ECF 230, at 2.)

*4.* In May 2019, Defendants tried to stave off discovery-on-discovery by promising the Court that Ricoh would attempt not only to recover Mende's missing email, but also to investigate the reasons why it was missing and to investigate any gaps in other custodians' ESI. (*See* ECF 230, at p. 3 (Ricoh "is in the process of a follow-on analysis of this question and also of the question as to why there is a Current Time Period temporal gap in the United States in Mr. Mende's archived emails.").) ██████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████



It is highly unlikely that Hunter's repeated false statements are the result of ignorance or carelessness, given that he was testifying as Defendants' Rule 30(b)(6) designee following preparation with counsel. In light of Defendants' disturbing pattern of deception detailed above, the most reasonable inference is that Hunter lied.

Defendants' repeated efforts to mislead Plaintiffs and the Court show consciousness of wrongdoing and strongly support an inference of an intent to deprive. *In re Petters Co.,* 606 B.R. at 827-30 (in considering party's intent to deprive "courts may look to how the party acted throughout litigation and during discovery disputes"). Such an inference is all the more appropriate here because Defendants' deception led to further spoliation and destruction of evidence by delaying until November 2019 the start of discovery on discovery.

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

**IV.    Harsh Sanctions Are Necessary To Remedy The Prejudice To Plaintiffs And Deter Defendants' Misconduct**

*A. Terminating Sanctions Against Mende and AMCI Holdings Are Necessary.* While termination sanctions are not often granted, "there are some types of misconduct that place too high a burden on allowing the case to continue." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 Civ. 1851, 2016 WL 4765689, at *9-10 (N.D. Ill. Sept. 13, 2016) ((finding that defendants' "conduct here is egregious enough to warrant" entry of default judgment where, *inter alia*, the defendants (1) failed to preserve "relevant information [that] existed on . . . computers" before destroying them; (2) failed to disclose a source of ESI until plaintiff complained about the paucity of documents produced in discovery; and (3) made affirmative misrepresentations in their filings about their efforts to comply with their discovery obligations). Given the importance of the missing emails to Plaintiffs' case, the compelling evidence of the destruction of ESI even as document collection was ongoing, and Defendants' repeated efforts to mislead Plaintiffs and this Court, terminating sanctions against these two Defendants are the only sanctions sufficient to remedy the prejudice to Plaintiffs, punish Defendants for their misconduct, and deter similarly situated defendants from abusing the discovery process. *See, e.g., id.*; *see also Rivera v. Sam's Club Humacao*, 386 F. Supp. 3d 188, 206 (D.P.R. 2018) ("Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.") (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 753 (1980)).

Nothing less than terminating sanctions can fully remedy the prejudice to Plaintiffs.

Adverse inferences are insufficient to replace the wealth of spoliated direct documentary evidence of domination, control, and ill intent in the mind's eye of a juror. Nor do they remedy the prejudice to Plaintiffs of being unable to test the credibility and veracity of Defendants' witnesses with contemporaneous documentary evidence. █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████

In any case, even if "an adverse-inference instruction, or a prohibition on introducing certain types of evidence, might level the playing field between the litigants, those sanctions would not be sufficient to punish defendants for their dishonesty." *Global Material Techs*, 2016 WL 4765689, at *10. Defendants have, since at least June of 2018, repeatedly and knowingly hidden their failure to preserve and their spoliation to avoid an independent investigation of these issues. *See supra*, at 7-10. The only sanction sufficient to punish Defendants Mende and AMCI Holdings for conduct so antithetical to the discovery process is to enter default judgment against them.

At bottom, these Defendants have proven that they are willing to spoliate documents critical to this case, and conceal that spoliation in order to gain advantage in this litigation. To this day, more than seven years after this case was filed, Defendants still have not instituted a litigation hold, and continue to mislead and conceal the truth in an effort to insulate themselves from the ramifications of their wrongful conduct. Nothing has curtailed this behavior, including

the Court's "discovery-on-discovery" order (which should have, at least, caused Defendants to begin to come clean). Any sanction short of a default judgment simply will invite similarly situated parties to do the same, secure in the knowledge that even if they are caught, the only consequence will be – at worst – a partial return to the *status quo ante*. The Court should therefore recommend terminating sanctions against Mende and AMCI Holdings.[24]

### B. Adverse Inferences and Evidentiary Preclusions Against the Remaining Defendants Are Warranted.

The Court should exercise its authority to "instruct the jury that it may or must presume the information was unfavorable to" Defendants Primetrade, Kundrun, and American Metals.[25] Fed. R. Civ. P. 37(e)(2). "An adverse inference instruction 'is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence.'" *Ottoson*, 268 F. Supp. 3d at 584 (citing *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438 n.12 (S.D.N.Y. 2010)).

By destroying the missing emails, Defendants created a substantial evidentiary gap that has impaired Plaintiffs' ability to fairly prosecute their claims. As discovery is still ongoing, the full extent of the prejudice, and the appropriate curative instructions, cannot be fully determined at this time.[26] However, as further set forth in Plaintiffs' proposed order, the Court should instruct the jury that it must infer from Defendants' destruction of relevant evidence that this evidence would have been unfavorable to them on the issues of Mende and Kundrun's

---

[24] Under the order of reference in this case (ECF No. 214) this Court can issue any of the sanctions available under Rule 37, "unless the sanction deployed disposes of a claim" or a defense. *Lokai*, 2018 WL 1512055 at *7. If the Court finds that terminating sanctions are appropriate, Plaintiffs request that it so recommend to Judge Castel.

[25] If terminating sanctions are not awarded, similar adverse inferences against the remaining Defendants are warranted.

[26] Plaintiffs should be permitted to seek additional specific adverse inferences and evidentiary preclusions once discovery is complete. *See Moody*, 271 F.Supp.3d at 431, 434 (awarding an adverse inference instruction but noting that the "precise form of the instruction will be decided by the Court at the time of trial"); *GN Netcom, Inc. v. Plantronics, Inc.*, No. 12 Civ. 1318, 2016 WL 3792833, at *14 (D. Del. July 12, 2016) (noting that the court would impose additional evidentiary sanctions "if requested by GN and found by the Court to be warranted as this case progresses toward trial").

domination and control of the corporate Defendants, the purpose of the Transfer Agreement and the SPA, and the basis for the Primetrade valuation. Such instructions are warranted by this Court's prior findings and the evidence Plaintiffs have destroyed. And given the circumstances surrounding the destruction of the missing ESI, such instructions are necessary and appropriate. *See, e.g., Ottoson*, 268 F. Supp. 3d at 580-84 (finding an adverse inference instruction appropriate); *Moody*, 271 F. Supp. 3d at 432 (same).

Further, any adverse inference instructions should be coupled with an order precluding Defendants from offering evidence or testimony "suggesting that [spoliated] emails would have supported any elements of their defenses or counterclaims," *Lokai*, 2018 WL 1512055, at *17, and from presenting testimony that Plaintiffs cannot fairly cross-examine without the spoliated emails, *see Resnik*, 2019 WL 1434051, at *11 ; *CAT3,* 164 F.Supp.3d 488 at 502; *Leidig*, 2017 WL 6512353, at *13–14 (same). Put simply, once Plaintiffs have made out a prima facie case in support of their claims, Defendants should be permitted only to "respond to [Plaintiffs' prime facie] showing with any defenses as to liability and damages that could not themselves be reasonably rebutted through the use of spoliated evidence." *Resnick*, 2019 WL 1434051, at *11 (citing, as an example, that defendants could still raise a statute of limitations defense because the spoliated evidence would not have been pertinent to plaintiffs' rebuttal of that defense).[27]

***C. Plaintiffs Are Entitled to Their Costs Under Rule 37(e)(1).*** In addition to the above, sanctions should be awarded under Rule 37(e)(1) to make Plaintiffs "whole for the extra cost and efforts [they] reasonably undertook in response to [Defendants'] recalcitrance." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Circ. 2018). Such compensatory monetary sanctions should include the "attorney's fees incurred in filing the instant motion," the

---

[27] The Court should also award punitive monetary sanctions for Defendants' misconduct. *See GN Netcom*, 2016 WL 3792833, at *6, *12-14.

"attorney's fees and any other costs incurred in attempts to recreate and provide the destroyed data," and "compensation for the expenses incurred in addressing other motions or hearings that were a direct result of the deletion of the data." *Yoe v. Crescent Sock Co.*, No. 15 Civ. 3-SKL, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017) (citing *Mosaid Techs., Inc. v. Samsung Elecs. Co.,* 348 F. Supp. 2d 332, 339 (D.N.J. 2004)); *see also Klipsch Grp., Inc.,* 880 F.3d at 635 (affirming trial court's award of costs, including expert fees). This remedy is necessary to "ameliorate the economic prejudice imposed on the [Plaintiffs] and as a deterrent to future spoliation." *CAT3*, 164 F. Supp. 3d at 502. Since January 1, 2018, Plaintiffs have been forced to expend significant time and exorbitant sums forcing Defendants to disclose their preservation and spoliation issues in the first instance, and then performing the investigation necessary to uncover the full extent of Defendants' spoliation. Accordingly, Plaintiffs request they be permitted to submit a schedule detailing the costs and fees they have incurred.

<u>**CONCLUSION**</u>

Defendants' rampant spoliation and their egregious efforts to cover it up require swift and sure sanctions to protect Plaintiffs and the integrity of the litigation process. For the foregoing reasons, Plaintiffs respectfully request that the instant motion be granted, and that the Court enter an order substantially in the form of the proposed order being submitted herewith.

Respectfully submitted,

Dated: September 25, 2020

*/s/ Adam K. Grant*
Adam K. Grant
Christopher A. Klimmek
Gregory R. Bruno

**Day Pitney LLP**
605 Third Avenue, 31st Floor
New York, NY 10158
T: (212) 297-5803
F: (212) 499-4154
agrant@daypitney.com
cklimmek@daypitney.com
gbruno@daypitney.com

*Counsel for Plaintiffs*

**Appendix A**

| Name | Role |
|------|------|
| Bruce Americus | Before his passing, Bruce Americus was an attorney with the law firm Buchanan Ingersoll & Rooney P.C., and appeared as counsel for Defendants in this case. (ECF Nos. 33, 75.) |
| Jabbar Bouyahiaoui | ███████████████████████████████████████ |
| ████████ | ███████████████████████████████████████ |
| William Hunter | ███████████████████████████████████████ |
| Hans Fleskes | ███████████████████████████████████████ |
| Fritz Kundrun | ███████████████████████████████████████ |
| Hans Mende | ███████████████████████████████████████ |

106195841



| Marcus Sabert | |
| Kishan Samaranayake | |
| Walter Stenger | |
| Michael Walker | |
| Robert "Reggie" Wood | |

106195841
.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 25th day of September 2020, copies of the foregoing document in its entirety, along with the accompanying Appendix A, were served upon counsel for Defendants by ECF and email as follows: Kevin P. Lucas, kevin.lucas@bipc.com; Stuart Slotnick, stuart.slotnick@bipc.com; Alexandra P. West, alexandra.west@bipc.com; Stanley Parker, stanley.parker@bipc.com; Rishi Bhandari, rb@madelbhandari.com; and Robert Glunt, glunt@mandelbhandari.com.

*/s/ Adam K. Grant*
Adam K. Grant

106195841