

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

**BY ECF**  May 7, 2021

The Honorable James L. Cott
United States District Court – S.D.N.Y.
500 Pearl Street
New York, NY 10007

      Re:   *CBF Industria De Gusa S/A, et al. v. AMCI Holdings, Inc., et al.*,
            <u>Case No.: 13 Civ. 2581 (PKC) (JLC)</u>

Dear Judge Cott:

      We write in opposition to Plaintiffs' Motion to Compel. [Dkt. 509]. While Defendants have made every effort to accommodate Plaintiffs' discovery demands, their request for a Prime Carbon deposition, as currently constituted, is objectively unreasonable and should be rejected.

**Background of Dispute**

      This dispute has a long history. On Sept. 9, 2019, Plaintiffs asked this Court to order each corporate Defendant to identify, on an entity-by-entity and topic-by-topic basis, "potential deponents with knowledge of information concerning the issues central to Plaintiffs' claims." Dkt. 318 at 1-2. Plaintiffs claimed that this information was critical to identifying which individual witnesses they would need to depose in this action. *Id.* While finding that Defendants' existing responses "should provide sufficient information for plaintiffs to decide which of these individuals to depose in this case," the Court nevertheless ordered Defendants to supplement the existing list, to the extent necessary, to ensure that "any individuals who have knowledge of the identified subjects" were identified. Dkt. 320. Defendants did so, in comprehensive emails dated September 23, 2019 and October 4, 2019.

      After receiving letters concerning deposition scheduling disputes, this Court held a status conference on Nov. 7, 2019. **(Exhibit A)**. The Court instructed the parties to work out (in the courtroom) a schedule under which all depositions could be complete by the end of January 2020. *Id.* 2-5. The parties reached an agreement under which approximately twelve witnesses would be deposed in the United States, including four 30(b)(6) designees of the Plaintiffs. *Id.* 8:7-25. The parties also agreed to submit a letter of request seeking authorization for foreign depositions to be conducted in Europe. *Id.* 9:1-11:5. At no point did Plaintiffs suggest that they would also seek 30(b)(6) depositions of the Defendants and the schedule did not provide time for them to do so. *See Id.* 13:1-14; 16:17-17:5. And when the parties subsequently submitted a joint letter of request seeking approval for European depositions, it made no reference to 30(b)(6) designees in Europe or a deposition of Prime Carbon, a Swiss company. [Dkt. 388].

      It was only on January 16, 2020, after multiple witnesses had already been deposed, that Plaintiffs first claimed the right to also seek 30(b)(6) depositions of each corporate Defendant on

every conceivable issue in the case. At that time, Plaintiffs did not even serve a deposition notice, merely a laundry-list of over 100 "proposed topics" for these "clean-up" depositions. **(Exhibit B)**. Defendants objected to Plaintiffs' late-served, burdensome, and heavily duplicative 30(b)(6) "proposals" immediately and have continued to object ever since.

In an effort to avoid burdening the Court, the Defendants compromised with respect to the U.S. entities. Plaintiffs abandoned depositions for two entities, and two others agreed to designate testimony from already-deposed witnesses and to produce two witnesses on a narrow set of topics. But the parties could not agree about Prime Carbon. Instead, in emails exchanged May 1, 2020, they agreed to "defer (without prejudice to their respective positions) until after the contemplated European depositions are completed ***whether and the extent to which*** Prime Carbon GmbH will provide Rule 30b6 deposition testimony by designee deponent(s) and/or by adopting other deposition testimony in lieu thereof on the Topics directed to it." (em added).

In December of 2020, after European depositions had already begun, Plaintiffs again raised the prospect of a Prime Carbon deposition. While objecting to any deposition of Prime Carbon, Defendants suggested – given that dozens of depositions had already taken place – that Plaintiffs revise the topics about which they were seeking testimony, in the hopes that a compromise could be reached. Plaintiffs instead served another kitchen-sink notice containing over 120 topics, essentially every potential issue in the case. **(Exhibit C)**.

Defendants objected to this notice in its entirety. But to avoid burdening the Court, Defendants have been attempting to negotiate a compromise with Plaintiffs for the last two months. In exchange for Plaintiffs dropping their requests for testimony on a majority of the topics, Defendants have agreed to provide documents that Plaintiffs neglected to previously request, and stipulations on numerous issues that Plaintiffs neglected to raise in prior questioning. However, as set forth below, this effort at compromise has been hampered by the vague and ever-shifting nature of Plaintiffs' topics and Plaintiffs' demand for testimony on matters either already covered or inappropriate for 30(b)(6) testimony.

Compromise has also been hampered by Plaintiffs' arbitrary restrictions on who may deliver the requested testimony. In recent discussions between the parties, Plaintiffs have insisted that Prime Carbon produce an American to testify.[1] As Plaintiffs know, Prime Carbon is a Swiss Company with no US operations or employees. Its current business is carried out by ███████████████████████████████ who has already been deposed for two days. Its administrative functions are handled by ███████████████████████ who has also been deposed for two days. Any American who testifies on the issues Plaintiffs identify will lack all personal knowledge and will need extensive education to answer any questions. In addition, Plaintiffs are unwilling to allow for the deposition of ███████████ a former ███████████████████ to be completed first. Each witness questioned on the matter has

---

[1] Plaintiffs claim that Defendants refused to designate European witnesses on potential topics prior to their deposition. Plaintiffs did not serve an actual 30(b)(6) notice on Prime Carbon until March 18, 2021, by which time all of the witnesses had already been deposed. And Plaintiffs' failure to seek authorization from the Swiss Court for a Prime Carbon deposition made Defendants skeptical of the legality of designating Swiss witnesses to testify.

testified that ▮▮▮▮ was the AMCI employee most involved in the transactions at issue in this case, and most likely to have knowledge of the topics on which Plaintiffs now seek testimony.

## I.     Ownership and Control

Plaintiffs have been provided with extensive testimony and sworn interrogatory answers concerning the ownership and control of SBT and Prime Carbon. Prime Carbon has identified all owners, directors, officers, board members and employees for SBT or Prime Carbon between January 1, 2008 and April 17, 2013. *See* Exhibit D ¶¶ 1-3. With respect to Mende's purported role in SBT and Prime Carbon, Plaintiffs have questioned SBT's former Managing Director, the sole member of its Board of Directors, Prime Carbon's current Director, Prime Carbon's sole remaining business employee and Mende himself about this specific issue. The relevant transcript portions are attached as **Exhibit E**. They confirm that while Mende took an occasional interest in SBTs business, particularly after it ran into financial difficulty, that he was not generally involved in day-to-day operations and that to the extent SBT's management sought guidance or approval from AMCI, it generally did so through ▮▮▮▮▮▮.

Plaintiffs do not like that testimony. They do not like it because it does not support their theory that Mende – who has an ultimate beneficial interest in dozens of companies, many much larger and more complex than SBT – actually spent his time micromanaging every aspect of SBT's trading business. Plaintiffs are welcome to argue their theory to the factfinder, and Defendants have made every effort to permit Plaintiffs to question every witness to might have knowledge concerning it. But forcing Prime Carbon to educate a witness with no personal knowledge as to a topic about virtually every witness with knowledge has already testified is unreasonable and wasteful. Plaintiffs' request should be denied.[2]

## II.     Transfer of Bank Liabilities

This issue ("the assets purchased and the liabilities assumed by Prime Carbon pursuant to the [Transfer] Agreement") has been a moving target. The Transfer Agreement identifies over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To determine whether a witness could be prepared on the topic at any level of generality, Defendants asked Plaintiffs to articulate what they sought to know about the assets / liabilities. Plaintiffs responded on April 2, 2021 with a series of specific questions concerning contract numbers, balance sheets, and credit agreements. With the exception of the balance sheets discussed below, Defendants have either answered these questions or agreed to provide the information.

---

[2]  *See Uni-Sys., LLC. v. United States Tennis Ass'n, Inc.*, Case No. 17CV147KAMCLP, 2020 WL 8266015, at *5 (E.D.N.Y. July 6, 2020) ("30(b)(6) depositions are not to be used to re-ask questions already explored with other fact witnesses"); *Powers v. Mem'l Sloan Kettering Cancer Ctr.*, Case No. 20 CIV. 2625 (LGS), 2020 WL 5968126, at *3 (S.D.N.Y. Oct. 8, 2020) ("while Plaintiff has not yet served a 30(b)(6) notice regarding Defendants' policies and procedures, any such notice is quashed on the grounds that Plaintiff can obtain this information through the depositions of other fact witnesses"); *Bellinger v. Astrue*, Case No. CV-06-321 CBA, 2011 WL 4529602, at *5 (E.D.N.Y. Sept. 28, 2011) (rejecting demand for 30(b)(6) testimony where "plaintiff has had the opportunity to depose the individuals involved in the events underlying her claims").



After discussions between the parties, Plaintiffs clarified that they wished to know how each provision in the Transfer Agreement fits together as a matter of Swiss law and wished to quiz a Prime Carbon designee concerning the legal implications of each section. Notably, Plaintiffs had already taken the depositions of ▆▆▆▆ and ▆▆▆▆▆▆ the two Swiss attorneys who ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Despite questioning each man for two days, Plaintiffs never asked either attorney to walk through the Transfer Agreement and explain how each provision operated. Plaintiffs instead asked whether the attorneys could recall from memory the specific assets and debts that the Transfer Agreement reflects, and other high-level questions about the agreement's operation. **Exhibit F**.

Purely legal conclusions or positions are not properly the subject of 30(b)(6) testimony.³ Even if they were, Plaintiffs' demand for testimony on this topic is pure gamesmanship. Plaintiffs are fully aware of Prime Carbon's position regarding the legal effect of the Transfer Agreement and have a complete accounting of each debt transferred. There is no genuine dispute that Prime Carbon ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Nor is there any credible argument that bank debts were ▆▆▆▆ Plaintiffs have received ▆▆▆▆▆▆▆▆▆▆ which would conclusively demonstrate any such ▆▆▆▆▆ They have reviewed contemporaneous correspondence with the ▆▆▆▆▆▆▆▆▆▆▆ Forcing an American witness with no personal knowledge to sit for a "gotcha" bar exam on the legal machinery of a Swiss contract serves no legitimate discovery purpose.⁴ Accordingly, Plaintiffs' request should be denied.

### III. SBT's Balance Sheets

It was only in a letter dated April 22, 2021 that Plaintiffs first identified the alleged balance sheet discrepancies about which they now wish to elicit testimony. Prime Carbon

---

³ *Cat Iron, Inc. v. Bodine Env't Servs., Inc.*, Case No. 10-CV-2102, 2011 WL 2457486, at *7 (C.D. Ill. June 15, 2011) ("30(b)(6) deponent cannot be asked to offer legal conclusions"); *Lenz v. Universal Music Corp.*, Case No. C 07-03783 JF PVT, 2010 WL 1610074, at *3 (N.D. Cal. Apr. 20, 2010) ("The facts that form those "beliefs" are legal conclusions and an improper topic for a Rule 30(b)(6) deposition."); *see also AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 (3d Cir. 2009) ("the testimony of …American's Rule 30(b)(6) witness, does not resolve the matter ….he offered only his own interpretation of the contract based on his reading of it at trial. This type of legal conclusion is not binding on American").

⁴ *See First Internet Bank of Indiana v. Laws. Title Ins. Co.*, Case No. 1:07-CV-0869-DFH-DML, 2009 WL 2092782, at *4 (S.D. Ind. July 13, 2009) ("In this case, Lawyers tried to use Rule 30(b)(6) in a very different way, by asking about legal theories and fact supporting the allegations in the complaint… This tactic has little to recommend it as a method for trying to lock an opponent into flawed and incomplete contentions and legal theories. A Rule 30(b)(6) deposition produces evidence, not judicial admissions.").

offered to look into the matter and (if inconsistencies were identified) to identify which balance sheet entries it believed to be correct. However, because the individual principally involved in preparing the relevant balance sheets ▮▮▮▮▮▮▮▮ is no longer in contact with Defendants, Defendants informed Plaintiffs that this might take some time to accomplish. Defendants also told Plaintiffs that Prime Carbon might rely upon testimony from ▮▮▮▮▮▮▮▮, who dealt regularly with Schneider and might have had involvement in the preparation of the documents.

Plaintiffs were dissatisfied with that answer and instead filed this motion. But to be clear, the differences between the balance sheets identified by Plaintiffs do not remotely indicate any difference in the total mix of assets and liabilities belonging to SBT as of ▮▮▮▮▮▮▮▮ The balance sheet attached to the Transfer Agreement (Exhibit 395) appears to be a ***trial balance*** – a report generated from SBT's accounting system on an account-by-account basis. In contrast, the documents provided to third parties (Exhibits 386 and 396) are balance sheets used for ***reporting*** purposes. These documents have different uses and convey information differently.

For example, the balance sheets contain  While Prime Carbon has not yet confirmed the basis for each and every "discrepancy" that Plaintiffs have identified, the fact that ▮▮▮▮▮▮▮▮ suggests that accounting treatment and consolidation/netting (rather than factual disagreements) are responsible for any differences.

Defendants do not believe that any further 30(b)(6) testimony is appropriate in this action. But if the Court deems testimony on this issue necessary, Defendants ask that such testimony take place after the deposition of ▮▮▮▮▮▮▮▮, so that Prime Carbon may potentially (1) designate any testimony he might offer on the topic; or (2) rely upon such testimony to assist in educating its corporate representative. Indeed, if ▮▮▮▮ is fully capable of answering Plaintiffs' questions, the need for further testimony of any kind might be obviated.

The Nov. 2019 discovery schedule contemplated 8 U.S. depositions. The joint letter of request submitted in January of 2020 contemplated 9 abroad. To date, Plaintiffs have deposed 23 witnesses over the course of 34 days. While this case is complex, some reasonable limits on discovery are still appropriate. The cumulative and improper nature of Plaintiffs' topics, coupled with Plaintiffs' failure to request 30(b)(6) witnesses during scheduling and their failure to seek Swiss authorization to depose Prime Carbon representatives abroad amply weigh against any additional deposition.[5] Defendants respectfully request that Plaintiffs' motion be denied.

---

[5] *Kemp v. CSX Transportation*, Case No. 119CV612DNHDJS, 2020 WL 8461515, at *2 (N.D.N.Y. Oct. 23, 2020) ("a court may properly deny 30(b)(6) deposition requests that are unduly burdensome, particularly where preparation for the depositions is likely to be costly, the potential benefit to the plaintiff is low, and more convenient, less costly, and less burdensome options exist.").

Honorable James L. Cott
May 7, 2021
Page 6

                                                Respectfully submitted,

                                                /s/ Robert Glunt
                                                Robert Glunt

cc:  Counsel of Record (by ECF only)