

# MANDEL BHANDARI LLP

80 Pine Street | 33rd Floor | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

**BY ECF**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

February 14, 2022

The Court provisionally grants defendants' application, provided that redacted versions of each document are filed on the public docket and each document in unredacted form (i.e., full set of unredacted motion papers) is delivered to Chambers within five (5) business days of filing.

SO ORDERED.
Dated: February 16, 2022

*/s/ P. Kevin Castel*
P. Kevin Castel
United States District Judge

Re: *CBF Industria De Gusa S/A, et al. v. AMCI Holdings, Inc., et al.*,
<u>Case No.: 13 Civ. 2581 (PKC) (JLC)</u>

Dear Judge Castel:

We represent the Defendants in the above-captioned action. We write pursuant to Rule 5(B) of this Court's Individual Practices to seek leave to file with redactions and/or under seal certain documents submitted in connection with Defendants' motion for summary judgment. In particular, Defendants seek to file a redacted version of:

- Defendants' Memorandum of Law
- Defendants' 56.1 Statement of Material Facts
- Defendants' Opposition to Plaintiffs' Motion to Preclude

In addition, Defendants seek to file under seal (1) their Counterstatement to Plaintiffs' 56.1 Statement of Material Facts;[1] (2) certain exhibits to the Declaration of Robert Glunt in Support of Defendants' Motion for Summary Judgment, and (3) the Declarations of Defendants' expert witnesses.[2] Attached hereto as Exhibit A is a chart listing each of the 114 documents which Defendants are seeking to file under seal. For each document Defendants set forth (1) a brief description of the document without reference to sensitive information; and (2) why the individual document meets the standard set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

Broadly speaking, the 114 documents fall into the following categories:

---

[1] Plaintiffs' 56.1 Statement of Material Facts was not itself filed under seal, but the overwhelming majority of substantive information in it was redacted. As Defendants' Counterstatement refers to substantially the same material, Defendants ask that it be filed under seal until such time as the Court rules upon Plaintiffs' 56.1 Statement, at which time both documents can be conformed and filed, in whole or in part, as appropriate.

[2] In keeping with the law in this district, Defendants have submitted sworn declarations from the experts themselves attaching, authenticating, and substantiating the expert reports that Defendants seek to rely upon in connection with their summary judgment motion.

- For 81 of the documents, Defendants believe that the documents are properly sealed because, *inter alia,* they were produced from Switzerland and are subject to the Swiss Data Protection Law, which restricts their public disclosure.

- For 33 of the documents, Defendants believe that the documents are properly sealed because, *inter alia*, they represent confidential financial and banking records, including balance sheets, income statements, and audited financial reports, from privately held companies, whose contents are particularly sensitive and for which any public access interest is minimal.

- 9 documents are excerpts of depositions taken in Switzerland pursuant to the Hague Convention and their contents are subject to the Swiss Data Protection Law.

- 5 documents are excerpts of depositions taken that were not taken pursuant to the Hague Convention but which refer to documents produced from Switzerland and which are subject to the Swiss Data Protection Law.

- 3 documents are expert reports that either refer to documents produced from Switzerland and which are subject to the Swiss Data Protection Law or refer to sensitive financial information, or both.

- One document is an expert report that refers extensively to information taken from Plaintiffs' financial records and which Plaintiffs have designated as confidential. Defendants take no position as to whether this information merits sealing under *Lugosch*, but request that the report be filed under seal so that Plaintiffs have the full opportunity to make any necessary showing as to whether it should remain under seal.

For the reasons set forth below, Defendants respectfully request that the documents be sealed, either because they are not subject to scrutiny under *Lugosch* in the first instance, or because there are "countervailing factors" and/or "higher values" that warrant sealing. Defendants further request that their memoranda of law and 56.1 statement be filed in redacted form, to the extent that they refer to information taken from sealed documents.

### I.   The *Lugosch* Framework

This Court recently articulated the *Lugosch* framework for determining whether "judicial documents" should be sealed from public view as follows:

> Under this framework, a court must determine: (1) whether the document subject to a sealing request qualifies as a judicial document; (2) the weight of the presumption of public access attaching to that judicial documents; and (3) if any countervailing factors or higher values outweigh the right of public access to that judicial document. To be classified a judicial document, material "must be relevant to the performance of the judicial function and useful in the judicial process." "A

document is thus 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers…."

*Valassis Comm'n, Inc. v. News Corp.*, Case No. 17-cv-7378 (PKC), 2020 WL 2190708, *1 (S.D.N.Y. May 5, 2020) (Castel, J.). "Though all judicial documents carry a presumption of public access," the weight of this presumption may vary based on the nature of the particular document. *Id.* As this Court noted, among the "[e]stablished factors and values that can outweigh the presumption of public access" are "business secrecy" and "privacy interests;" and specifically, "[f]inancial records of a wholly-owned business…will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* (*quoting United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). "[D]iscovery documents not filed with the court 'lie entirely beyond the presumption's reach.'" *Id.*

## II. Documents Produced From Sources Based in Switzerland and Subject to the Swiss Data Protection Law

Defendants attach 81 documents produced by Defendants themselves or non-parties from sources based in Switzerland. To the extent that these documents contain "information relating to an identified or identifiable person" they are subject to the Swiss Federal Act of 19 June 1992 on Data Protection (updated January 2014) (CC 235.1) ("Swiss Data Protection Law"). An English translation of that law is attached hereto as Exhibit B and available online at:

https://www.fedlex.admin.ch/eli/cc/1993/1945_1945_1945/en

This law is significantly broader and stricter than any comparable U.S. Law and imposes substantial restrictions on the export of any electronic documents containing information about private individuals or business entities. This includes information that would not typically be considered sensitive in the United States

The Swiss Data Protection Law protects from disclosure "personal data," broadly defined as "all information relating to an identified or identifiable person," including both "natural" and "legal" persons. Swiss Data Protection Law, Art. 3(a) & (b). Critically, the Swiss Data Protection Law permits foreign disclosure of "personal data" only in limited circumstances and only where specific steps are taken that ensures that Swiss laws are respected and the subject data is treated appropriately. *Id.* Arts. 6 & 7. As recognized by the Sedona Conference, this is commonly accomplished with a Protective Order, which "signifies to [foreign] data protection authorities that the Data Protection Laws are respected and that Protected Data will be treated appropriately by the parties under the auspices and protections of the U.S. court." The Sedona Conference: International Principles on Discovery, Disclosure & Data Protection in Civil Litigation (Transitional ed.) (Jan. 2017), at Principal 4. (attached hereto as Exhibit C).

To ensure compliance with the strictures of Swiss Data Protection Law, the late Judge Sweet approved and entered a Stipulated Protective Order that afforded appropriate protection for, among other things, material subject to "foreign Data Protection Laws…." (ECF #120, ¶ 4.) In reliance on the Stipulated Protective Order, Defendants then produced "personal data"

Honorable P. Kevin Castel
February 14, 2022
Page 4

otherwise subject to protection and limited disclosure under Swiss Data Protection Law. But for the Stipulated Protective Order, Defendants would have not been able to produce documents from Switzerland-based sources in the manner that they did, and Plaintiffs likely would have been left to explore other alternatives for acquiring those materials, including pursuing discovery under the Hague Convention. In short, the issuance of the Stipulated Protective Order facilitated a more fulsome U.S.-style of discovery than would have otherwise likely occurred under the Hague Convention.

Because of the specific circumstances of this case, the Stipulated Protective Order was not merely an "umbrella protective order" entered to "facilitate discovery" that would have been exchanged anyway. *See Lugosch*, 435 F.3d at 125. To the contrary, absent the Stipulated Protective Order and its specific attention to issues related to Swiss Data Protection Law, information produced by Defendants or non-parties from Switzerland-based sources in this matter could not have been produced in the same manner in compliance with Swiss Data Protection Law and without risking liability. Upholding the reasonable expectations of parties who sought and relied upon the terms of the Stipulated Protective Order to ensure compliance with Swiss Data Protection Law represents a "higher value" that warrants sealing of these materials.

Similarly, excerpts of the transcripts of 9 depositions of foreign witnesses taken in Switzerland (the "Swiss Deposition Transcripts") should also be sealed to ensure compliance with Swiss Data Protection Law. Those depositions were taken pursuant to Letters of Request and in accordance with the Hague Convention. Each witness testified voluntarily under the express written condition that "[a]ny applicable provision, rules or other measures imposed by Swiss law and/or the Hague Convention regarding the holding of depositions or otherwise obtaining evidence in Switzerland by a foreign authority ***will be strictly adhered to***…." (*See* Exhibit D, Letters of Request) (emphasis added). In each deposition of a witness deposed pursuant to the Letters of Request, Plaintiffs themselves marked the Letters of Request as exhibits and asked each witnesses if they understood that they were testifying pursuant to them. They indicated that they did. As a consequence, Swiss Data Protection Law governs the transcript, and those documents should be sealed for the same reasons that electronic documents produced from Switzerland-based sources should be sealed.

Additionally, Defendants submit 3 expert reports as attachments to Declarations from the relevant experts. These expert reports contain references to information contained in documents produced from Switzerland-based sources and should be sealed to ensure compliance with Swiss Data Protection Law for the reasons set forth above.

### III. Documents Constituting Financial Reports of Private Entities, Including Non-Parties, Should Be Sealed

Defendants submit 33 documents that contain detailed banking and financial information concerning certain of Defendants and other non-parties.[3] These include audited annual financial statements, monthly financial statements, bank statements, partially redacted bank account numbers,[4] guaranty agreements, balance sheets, general ledgers, and income statements.

These documents reveal the identities of customers, vendors, and lenders; the terms of banking agreements; and details regarding the subject entities' financial performance. The Defendants and non-parties whose detailed financial information is contained in these documents are private companies. This Court has recognized that "[f]inancial records of a wholly-owned business…[which] will weigh more heavily against access than conduct affecting a substantial portion of the public." *Valassis Comm'n, Inc.*, 2020 WL 2190708 at *1.

Defendants are not seeking to seal business emails produced from the United States, incidental business records, or the contracts directly at issue in this case. Defendants understand that those records, while extremely confidential and potentially sensitive in the ordinary course, are not appropriately held under seal, particularly where their contents are material to the events and occurrences at issue in a litigation. But Defendants' financial reports and banking records are particularly sensitive, of no legitimate public interest, and do not (in their particulars) directly impact the facts to be decided by the Court. While *Lugosch* does not endorse blanket sealing of business documents, these documents do warrant protection and are appropriately placed under seal.

To the extent that the Court desires more information or argument – as to a specific legal point or a specific document – Defendants respectfully requests that they be given the opportunity to present it.

Respectfully submitted,

/s/ Robert Glunt
Robert Glunt

cc:  Counsel of Record
     (via ECF)

---

[3] To the extent that these documents were produced from Switzerland-based sources they should also be sealed to ensure compliance with Swiss Data Protection Law, for reasons set forth above.

[4] Rather than redacting entire bank account numbers, Defendants limited their redactions to portions of the numbers so that account information could be identified throughout the productions.