USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _9/8/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CBF INDUSTRIA DE GUSA S/A, *et al.*,  :
                                                            :
                    Plaintiffs,               :
                                                            :        **OPINION AND ORDER**
        -against-                            :
                                                            :        13-CV-2581 (PKC) (JLC)
AMCI HOLDINGS, INC., *et al.*,      :
                                                            :
                    Defendants.           :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

On August 18, 2021, the Court imposed sanctions on Defendants pursuant to

Rule 37(e)(1) of the Federal Rules of Civil Procedure and awarded Plaintiffs, *inter*

*alia*, reasonable attorneys' fees and costs.  Plaintiffs have now moved for their fees

and costs in the amount of $955,974.93.  For the reasons stated below, the Court

grants Plaintiffs' motion with certain modifications, and awards a total of

$872,557.62.

## I.    BACKGROUND

The Court presumes familiarity with the factual background of the case,

which is explained in greater detail in its prior decisions, as well as with the

particular facts giving rise to the motion for sanctions.  *See CBF Industria de Gusa*

*S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 WL 4190628, at

*1–9 (S.D.N.Y. Aug. 18, 2021).  On August 18, 2021, the Court issued an Opinion

and Order granting Plaintiffs' motion for sanctions in part, finding Defendants

liable for spoliation under Rule 37(e)(1), but not under Rule 37(e)(2).  *Id*. at *20–21.

1

The Court also ruled that Defendants were "liable for Plaintiffs' fees and costs incurred in briefing [the] sanctions motion." *Id.* Plaintiffs' counsel were "directed to provide Defendants' counsel with a breakdown of the fees and costs within 30 days of the date of [the] Opinion" and if the parties could not agree as to the proposed amounts, they were to "seek a conference with the Court, and further motion practice [would] be scheduled." *Id.*

On January 18, 2022, the parties submitted a joint letter-motion in which they advised the Court of their inability to reach agreement on the attorneys' fees and costs. Dkt. No. 554. Following a telephone conference on January 21, 2022, the undersigned set a briefing schedule to resolve the issue. Dkt. No. 556. On February 14, 2022, Plaintiffs moved for attorneys' fees and costs in the amount of $958,563. Notice of Motion, Dkt. No. 557; Memorandum of Law in Support ("Pl. Mem."), Dkt. No. 558; Declaration of Adam K. Grant dated February 14, 2022 ("Grant Decl."), Dkt. No. 559.[1] Defendants filed their opposition papers on March 14, 2022. Unredacted Memorandum of Law in Opposition ("Def. Mem."), Dkt. No. 581; Declaration of Robert Glunt dated March 14, 2022 ("Glunt Decl."), Dkt. No. 582. On March 31, 2022, Plaintiffs' filed their reply brief. Reply Memorandum of Law in Support ("Pl. Rep."), Dkt. No. 595.[2]

---

[1] Plaintiffs subsequently adjusted their total request to $955,974.93 based on their withdrawal of certain Day Pitney Fees billing entries that Defendants have disputed. *See* Pl. Rep. at 10. This adjustment will be discussed in turn below.

[2] As explained in its August 18, 2021 decision, the Court has authority to impose sanctions pursuant to its general pretrial management of the litigation under 28 U.S.C. § 636(b). *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *9.

## II.    DISCUSSION

### A.    Legal Standard

"After concluding a party is entitled to attorneys' fees, a court determines the 'presumptively reasonable fee' to which that party is entitled by multiplying a reasonable hourly rate for each attorney by the reasonable number of hours he or she expended on the case." *Capitol Records, LLC v. ReDigi Inc.*, No. 12-CV-95 (RJS), 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)).  "The presumptively reasonable fee, also known as the lodestar, is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Olaechea v. City of New York,* No. 17-CV-4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  A reasonable hourly rate is determined based on "the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005)).  "Ultimately, the presumptively reasonable fee should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-3668 (MKV) (JLC), 2020 WL 5904357, at *2 (S.D.N.Y. Oct. 6, 2020) (cleaned up), *adopted by* 2020 WL 6363960 (Oct. 29, 2020).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Requested fees "must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done." *Olaechea*, 2022 WL 3211424, at *13 (quoting *Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015)). "Counsel are not required to record in great detail how each minute of their time was expended," but "should identify the general subject matter of their time expenditures." *Mason Tenders*, 2020 WL 5904357, at *2 (quoting *Hensley*, 461 U.S. at 437, n.12) (cleaned up). "If a court finds that the fee applicant's claim is excessive or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Bentley Labs. LLC v. TPR Holdings LLC*, No. 14-CV-6306 (HBP), 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017) (cleaned up). "The court may use its discretion, based on its experience in general and with the particular case at issue, to trim the fat from a fee application." *New York Youth Club v. Town of Harrison*, No. 12-CV-7534 (CS), 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (cleaned up).

## B.   Application

Plaintiffs, represented by attorneys from Day Pitney LLP, originally sought a total of $958,563 to "compensate [them] for the time and resources spent because of

Defendants' unjustifiable failure to preserve documents or even issue a litigation hold." Pl. Mem. at 1 (quoting *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *20). This figure allegedly reflects "only those fees and expenses that resulted in the Court's finding of spoliation under Rule 37(e)(1) . . . [and is] only a portion of the $1.5 million in attorneys' fees, expert fees, and costs that Plaintiffs incurred . . . ." *Id.* Specifically, they have requested $500,183 in fees associated with 888.4 hours of work done by 14 Day Pitney attorneys ("Day Pitney Fees"), $416,725 in fees associated with the forensic expert report by Capsicum ("Capsicum Fees"), and $41,654 in disbursements for Day Pitney attorney expenses ("Disbursements"). Grant Decl., Exh A. (Dkt. No. 559-1) at 4–5.

Defendants do not dispute that Plaintiffs are entitled to attorneys' fees and costs, nor do they challenge the reasonableness of the proposed hourly rates of the attorneys. Instead, they contend that the number of hours for which Plaintiffs seek to recover is disproportionate to their degree of success in their sanctions motion, the amount of expenses actually incurred, and the expenditures reasonably necessary to bring their motion. *See*, *e.g.,* Def. Mem. at 1. They request that the Court award fees and costs not to exceed $129,952.98. *See id.* at 3. For the following reasons, the Court concludes that the hourly rates billed by Day Pitney attorneys are reasonable, and the hours expended for which Plaintiffs seek to recover are reasonable with a few modifications.

### 1.  Reasonable Hourly Rates

An attorney's reasonable hourly rate is determined according to "the prevailing rates in the community for similar services by lawyers with similar skill, experience, and reputation."  *Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at *11 (S.D.N.Y. Feb. 4, 2020) (quoting *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C, 15D, AFL-CIO, ex rel. Callahan v. New York Recycling, Inc.*, No. 06-CV-781 (RJH), 2007 WL 2591222, at *3 (S.D.N.Y. Sept. 7, 2007)), *adopted by* 2020 WL 1528117 (Mar. 30, 2020).  Although Defendants do not challenge the hourly rates billed by Plaintiffs, the Court has nonetheless independently reviewed Plaintiffs' submissions to determine whether their rates are reasonable.

Here, Plaintiffs seek reimbursement for the work performed by Day Pitney attorneys at the following hourly rates:

| | | | Hourly Rates | |
|---|---|---|---|---|
| **Name** | **Title (2019-20)** | **Graduation Year** | **2019** | **2020** |
| Antebi, Amberly Nicole | 2nd-3rd Yr. Associate | 2017 | 320.00 | 350.00 |
| Betensky, Gary S | Partner | 1984 | n/a | 650.00 |
| Bruno, Gregory R. | 5th-6th Yr. Associate | 2013 | 395.00 | 430.00 |
| Danzer, Matthew B | 4th-5th Yr. Associate | 2015 | 365.00 | 410.00 |
| Fialkoff, Michael, L. | 4th-5th Yr. Associate | 2015 | 365.00 | 410.00 |
| Grant, Adam K. | Partner | 2001 | 725.00 | 750.00 |
| Klimmek, Christopher A | Counsel/Partner | 2008 | 475.00 | 510.00 |

| Langstedt, Sarah, S. | 9th Yr. Associate | 2011 | n/a | 480.00 |
|---|---|---|---|---|
| Lathia, Naju R | 6th-7th Yr. Associate | 2012 | 405.00 | 445.00 |
| Musmanno, Alyssa R | 3rd Yr. Associate | 2016 | 355.00 | n/a |
| Nichols, Clifford E | Counsel | 2001 | 565.00 | 590.00 |
| Rosario, Franklin | 2nd-3rd Yr. Associate | 2017 | 325.00 | 345.00 |
| Sher, Elizabeth J. | Partner | 1983 | 750.00 | 775.00 |
| Zelig, Jonathan S | Partner | 2011 | 565.00 | 595.00 |

Grant Decl. ¶ 7.

The requested associate rates are between $320–480, and requested counsel and partner rates are between $475–775. *See id.* These rates comport with, and are in some cases even lower than, rates awarded in other complex commercial litigation cases in this District. *See, e.g., King Fook Jewellry Group Ltd. v. Jacob & Company Watches, Inc.*, 14-CV-742 (ER) (JLC), 2019 WL 2535928, at *4 (S.D.N.Y. June 20, 2019) (for breach-of-contract litigation and other commercial disputes, rates awarded to partners at large law firms in this District tend to cluster in $500 to $700 range) (collecting cases), *adopted by* 2019 WL 4879212 (Oct. 3, 2019); *Tiffany & Co. v. Costco Wholesale Corp.*, No. 13-CV-1041 (LTS) (DCF), 2019 WL 120765, at *10 (S.D.N.Y. Jan. 7, 2019) (hourly rates of $315–585 for associates and $625–845 per hour for partners "are reasonable considering the prevailing rates for firms engaging in complex litigation in this district"); *APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11-CV-9718 (ER), 2018 WL 5784544, at *5 (S.D.N.Y. Nov. 5, 2018) (approving hourly rates of up to $1,058.25 in breach of contract action); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth*

7

*Kownacki LLC*, No. 16-CV-8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30,

2017) (awarding associate rates between $569.02 to $753.42 "given the experience

and work performed by the particular individuals" in a breach of contract case that

was "relatively straightforward" but also involved foreign law and work done on an

urgent basis); *United States Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets*,

12-CV-9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y Nov. 30, 2016) (billing rates

ranging from $250 per hour to $1,055 per hour reasonable as "partner billing rates

in excess of $1,000 an hour are by now not uncommon in the context of complex

commercial litigation") (cleaned up).  Notably, the only requested partner rates to

exceed $700 ($750 for Adam Grant and $775 for Elizabeth Sher), which are still well

within the range of awarded rates in this District, are for attorneys who have 19

and 37 years of experience, respectively.  *See* Grant Decl. ¶ 7.

In sum, the hourly rates billed by Day Pitney's attorneys are reasonable.

## 2.  Reasonable Number of Hours

Plaintiffs allege that between January 15 and April 4, 2019, they spent 47

hours "trying to convince Defendants to provide transparency into their collection

and preservation of ESI and to acknowledge that ESI was missing for Mende and

others."  Pl. Mem. at 5.  Next, they contend that they spent "over 140 hours trying

to determine the extent of the problems with Defendants' ESI, analyzing Ricoh's

efforts to explain away the missing ESI, and trying to convince the Court to grant

discovery-on-discovery" from April 5 to November 7, 2019.  *Id*. at 5.  Plaintiffs

subsequently explain that from November 8, 2019 to September 25, 2020, they

spent "over 240 hours conducting discovery on discovery, and working with their expert, Capsicum, to analyze the data provided and to help develop its analysis and reports." *Id.* at 6. Finally, Plaintiffs allege that they "devoted over 440 hours to briefing their motion for sanctions, and conducting additional expert discovery in response to Defendants' two rebuttal expert reports" between September 25 and December 31, 2020. *Id.* at 7.

Defendants do not contest that fees should be awarded, but respond that the amount of fees sought should be substantially reduced. *See* Def. Mem. at 6. In support of their position, they make seven independent arguments. First, they contend that because Plaintiffs' attorneys are subject to a contingency fee arrangement, the only fees and expenses to be awarded should be those that have actually been incurred thus far. *Id.* at 1, 4–7. Second, they argue that many of the applications, hearings, and correspondence for which Plaintiffs seek to recover would have taken place independent from the conduct the sanction award seeks to remedy and therefore are not "properly compensable." *Id.* at 1, 7–9. Third, they contend that the discovery-on-discovery Plaintiffs undertook was excessive and unnecessary, and therefore not compensable. *Id.* at 1–2, 9–11. Fourth, they assert that the report of Plaintiffs' forensic expert is not compensable. *Id.* at 2, 11–16. Fifth, they argue that Plaintiffs' application does not account for their "limited success" in the sanctions motion, as they received only one of three forms of relief sought. *Id.* at 2, 18–19. Sixth, they claim that a review of the billing entries that undergird the requested award demonstrates overstaffing, block billing, and

overbilling.  *Id.* at 2, 19–23.  <u>Seventh</u> and finally, they assert that the Court should

consider the amount Defendants themselves have already expended related to the

missing data to the extent that deterrence or non-compensatory issues factor into

the final award.  *Id.* at 2–3, 23–24.

As a starting point in its analysis, the Court is mindful of the Supreme

Court's guidance that

> [t]rial courts need not, and indeed should not, become
> green-eyeshade accountants. The essential goal in shifting
> fees (to either party) is to do rough justice, not to achieve
> auditing perfection. So trial courts may take into account
> their overall sense of a suit, and may use estimates in
> calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).  With that principle in mind, the Court

concludes that Plaintiffs appropriately limited their request based on the amount of

relief obtained in their sanctions motion and are therefore entitled to the majority of

the fees sought, with the exception that the fees requested in conjunction with their

forensic expert should be further reduced by 20%.

### a.  Plaintiffs' recovery need not be limited to fees actually paid.

As a threshold matter, Defendants' argument that the recovery be limited to

fees actually paid is unavailing.  Here, some of the Plaintiffs pay fees and expenses

as incurred, while others pay based on negotiated fee arrangements with counsel.

*See* Pl. Mem. at 10, n.6 (citing Grant Decl. ¶ 9).  Defendants contend that "[b]ecause

contingency fees are owed only in the event of a successful recovery, the non-hourly

Plaintiffs may never be obligated to pay their share of the fees and expenses

reflected in the billing records," and as such, only a portion of the fees requested can be recovered.  Def. Mem. at 4.

Relevant case law prescribes otherwise.  *See, e.g., Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 (2d Cir. 2021) ("neither the *pro bono* nature of [the party's] representation nor [the agreement] . . . not to accept any fees is a barrier to a sanction of attorney's fees" in 28 U.S.C. § 1927 sanction case); *Mintz Fraade L. Firm, P.C. v. Brady,* No. 19-CV-10236 (JMF), 2021 WL 621206, at *6 (S.D.N.Y. Feb. 17, 2021) ("no merit" to argument that attorney's fees pursuant to Rule 37 sanctions are inappropriate when counsel allegedly retained on contingency basis).  In *Liebowitz*, 6 F.4th at 286, the Second Circuit affirmed a decision from this District that awarded reasonable attorney's fees and costs as sanctions even though counsel "handled the case *pro bono*," recognizing that "courts have pegged sanctions to attorney's fees and costs even where the opposing counsel did not actually receive fees." *Usherson v. Bandshell Artist Mgmt.,* No. 19-CV-6368 (JMF), 2020 WL 3483661, at *20 (S.D.N.Y. June 26, 2020) (collecting cases).  Such is the case here, where attorneys' fees and costs are appropriate even when counsel did not actually receive fees from some of their clients.

The cases to which Defendants cite are unpersuasive.  In *Larusch*, the court specifically relied on an interpretation of the plain language of Rule 37(a)(5), which provides for attorney's fees specifically "incurred" in making the motion, to reach its conclusion that fees could not be awarded when based on a contingency fee arrangement.  *White v. Larusch*, 532 F. Supp. 3d 122, 124–26 (W.D.N.Y. 2021); Fed.

11

R. Civ. P. 37(a)(5)(A); *see also* Def. Mem. at 5. Not only is the language in Rule 37(e) different from that in Rule 37(a) and the operative word ("incurred") not present in the former, but the Second Circuit has clarified since *Larusch* that the use of the phrase "reasonably incurred" in relation to attorney's fees "does not restrict fees to those actually charged to the client." *Liebowitz*, 6 F.4th at 287 (finding persuasive the 10th Circuit's analogous analysis in a Rule 37 context). Moreover, in *Goldman*, the court distinguished the facts there, in which Rule 11 sanctions were sought, from other cases in which *pro bono* representation was awarded attorney's fees in conjunction with Rule 37 sanctions. *See Goldman v. Barrett,* No. 15-CV-9223 (PGG), 2019 WL 4572725, at *7, n.9 (S.D.N.Y. Sept. 20, 2019).

Thus, no reason exists to limit Plaintiffs' recovery to fees actually paid thus far in the litigation.[3]

### b. Plaintiffs largely succeeded in their sanctions motion, and the requested attorneys' fees are reasonable.

Defendants separately contend that the amount of fees sought should be reduced across the board "because of [Plaintiffs'] limited success with the sanctions

---

[3] Defendants also assert, as part of this argument, that Plaintiffs are "incorrect" that they have been prejudiced. Def. Mem. at 6. This contention is without merit. Even though fact discovery continued while the sanctions motion was pending, the underlying sanctions decision explicitly recognized that "[g]iven the totality of the record, Plaintiffs have been prejudiced by the lost emails." *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *17; *see also* Pl. Rep. at 2. There is no reason to revisit that determination. In addition, the case would have been further along than it is now had it not been for the spoliation issue and the subsequent time that the parties spent litigating the sanctions motion.

motion." Def. Mem. at 18.  They argue that Plaintiffs only succeeded on one-third of

the three forms of sanctions they requested: (1) "Terminating Sanctions Against

Mende and AMCI Holdings;" (2) "Adverse Inferences and Evidentiary Preclusions

Against the Remaining Defendants;" and (3) "Costs Under Rule 37(e)(1)."  *Id.*

Because of Plaintiffs' purported success on only one out of three forms of relief

sought, Defendants argue that the fees expended in conducting discovery on

discovery and in bringing their sanctions motion should be reduced by two-thirds.

*Id.*

        However, Defendants' discussion of the relief sought and granted understates

the nature of Plaintiffs' success on their sanctions motion.  As Plaintiffs observe, the

level of their success is more readily ascertainable based on the number of elements

they needed to prove to obtain relief.  *See* Pl. Rep. at 6.  Plaintiffs successfully

proved four of the five elements required for Rule 37(e) sanctions: (1) Defendants

had an obligation to preserve ESI; (2) ESI was lost because Defendants failed to

preserve it; (3) the lost ESI cannot be replaced through additional discovery; and (4)

the lost ESI resulted in prejudice to Plaintiffs.  *See id.; CBF Industria de Gusa S/A*,

2021 WL 4190628, at *13–15.  When "successful and unsuccessful claims are

intertwined . . . [courts] should focus on the significance of the overall relief

obtained by the plaintiff in relation to the hours reasonably expended on the

litigation."  *Holick v. Cellular Sales of New York, LLC,* No. 21-CV-948, 2022 WL

4088001, at *3 (2d Cir. Sept. 7, 2022) (cleaned up).  It is true Plaintiffs were unable

to demonstrate that Defendants had the intent to deprive required for Rule 37(e)(2)

sanctions, and thus only obtained Rule 37(e)(1) sanctions. However, the awarded

sanctions constitute meaningful relief achieved by Plaintiffs: (1) a finding of

spoliation; (2) the exclusion of evidence; and (3) permission to present evidence of

spoliation to the jury. *See CBF Industria de Gusa S/A*, 2021 WL 4190628, at *20–

21; Pl. Rep. at 6. Defendants cite no authority to the contrary, and their position

that the amount of fees to be assessed should be based solely on the percentage of

success relative to the forms of relief sought is unfounded.

      Courts have significant discretion in determining the amount of fees to award

as part of a sanctions motion, even when the motion is ultimately only granted in

part. *See, e.g., Liebowitz*, 6 F.4th at 288 (district courts may "hold lawyers liable for

the cost of litigating a sanctions motion that is only partially successful"); *Restivo v.

Hessemann,* 846 F.3d 547, 594 (2d Cir. 2017) ("Although attorneys should not be

reimbursed for their work on claims that bore no relation to the grant of relief . . .

where the district court determines that the successful and unsuccessful claims are

inextricably intertwined and involve a common core of facts or are based on related

legal theories, it is not an abuse of discretion for the court to award the entire fee.")

(cleaned up); *Enmon v. Prospect Capital Corp*., 675 F.3d 138, 148 (2d Cir. 2012)

(affirming district court's decision to award entire cost of litigating sanctions

motion, noting that "[t]he fact that [the district court] denied the sanctions motion

in part did not prevent [it] from imposing the full cost of litigating the motion,

which, if not completely successful on all the grounds urged by [the moving party],

was nevertheless well founded"). When only partial success is achieved but the

claims "involve[d] a common core of facts or are based on related legal theories and are therefore not severable," as is the case here, "attorney's fees may be awarded for work done on unsuccessful claims as well as successful ones . . . because most of counsel's billed time is devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022); *see also, e.g., Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ("[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably intertwined and involve a common core of facts or are based on related legal theories") (cleaned up).

Notwithstanding this authority, Plaintiffs in this case have pro-rated their request to account for the lack of success on their 37(e)(2) motion. *See* Pl. Mem. at 3–4 (citing Grant Decl. ¶¶ 5–6). Defendants acknowledge that Plaintiffs have omitted time spent seeking sanctions under Rule 37(e)(2) from their motion papers, but argue that these reductions are "insufficient." Def. Mem. at 19. While an exact determination as to whether Plaintiffs are seeking fees that can be solely attributable to the 37(e)(1) claim is effectively impossible, their approach here is reasonable, and Defendants have not persuaded the Court otherwise. Thus, while the Court will not go so far as to award the entirety of the fees associated with litigating the sanctions motion (and Plaintiffs do not request as much), it nevertheless concludes that Plaintiffs achieved significant relief, and as such, their request accounts for an appropriate reduction in fees.

Next, Defendants argue that even beyond the broad-based reduction discussed above, Plaintiffs' request should be further reduced as follows: (1) expenses itemized by Plaintiffs that "are not principally ESI related and would have taken place in essentially the same form even if none of the Mende custodial email had been lost" should not be included in any award; (2) Plaintiffs should not be awarded fees for discovery that was "excessive and unnecessary" even if it did relate to contentious ESI matters; and (3) Plaintiffs' award should be further reduced because of improper billing practices including overstaffing, block billing, and non-compensable expenses.  Def. Mem. at 7, 9, 19–22.  Plaintiffs counter that the requested fees are both reasonable and necessary.  *See* Pl. Rep. at 3.

As an initial matter, in response to Defendants' arguments, Plaintiffs have made three concessions.  First, they have withdrawn their request for $1,987 in fees attributable to letters to the Court (billing entries labeled as ECF Nos. 216 and 308) in April and August of 2019.  *See* Pl. Rep. at 5, n.2.  Second, they have also withdrawn their request for $601.07 in fees attributable to five entries Defendants noted to be "redundant."  Def. Mem. at 20; *see* Pl. Rep. at 7.  Third, Plaintiffs have "withdraw[n] their request as it related to Alyssa Paddock's single time entry," which the Court understands to be a February 2019 document review call for which Plaintiffs sought $71.31.  Pl. Rep. at 7, n.4 (*See* Grant Decl., Exh. A at 8).  These withdrawals amount to a total of $2,659.38 to be subtracted from the total amount of Day Pitney Fees sought at the outset of the fees motion ($500,183), rendering

Plaintiffs' new Day Pitney Fees request to be $497,523.62 and Plaintiffs' total request to be $955,903.62 ($958,563 − $2,659.38).  *See* Grant Decl., Exh. A at 4–5.[4]

Beyond that, as described above, Plaintiffs have already made cuts to the amount they request based on a reasonable interpretation of how much of each billed time entry was spent on the relevant issue at hand.  Specifically, as relevant to activities that Defendants claim would have occurred independent of the spoliation motion, Plaintiffs explicitly do not seek the "entire cost" of review efforts, or "all of the fees" incurred in connection with regularly scheduled conferences, but rather only a portion of those fees that they have calculated to be proportional to the sanctions motion.  Pl. Rep. at 3–4.  While it is true that courts may apply percentage cuts to block billing when entries are too vague to assess their reasonableness, and block billing was employed on occasion in this case, Defendants do not address the significant number of clearly identified billing entries, nor do they provide a substantial reason as to why the cuts Plaintiffs have already made are insufficient and warrant further reduction.  *See* Def. Mem. at 22; *see also Raja*, 43 F.4th at 87 (block billing "generally disfavored" but "by no means prohibited," especially when court still able to conduct meaningful review).  Moreover, although the parties disagree about the necessity of certain depositions, *see* Def. Mem. at 10–11; Pl. Rep. at 5, Defendants have not provided sufficient information to persuade

---

[4] Plaintiffs suggest that the amount they have "withdrawn" from their request is $2,588.07, and the total amount requested is now $955,974.93.  Pl. Rep. at 10. However, the $2,588.07 figure appears to represent the total of $1,987 + $601.07, and does not include Plaintiffs' withdrawal of the single Alyssa Paddock entry ($71.31).

the Court that the topics addressed during those depositions were not at all relevant to the Rule 37(e)(1) inquiry and are therefore inappropriate to include, proportionally, in a fees motion.  Finally, while a total of 14 attorneys participating in the spoliation litigation is a significant number, *see* Def. Mem. at 20, Plaintiffs explain that the number is in large part due to turnover over the course of the two years in which the sanctions motion was researched and briefed.  *See* Grant Decl. ¶ 7.  Thus, the number of attorneys on whose behalf fees are sought relative to the time period and complexity of the litigation is reasonable.

In sum, a further reduction of Plaintiffs' modified request for Day Pitney Fees ($497,523.62) or Disbursements ($41,654) is unwarranted.[5]  The Court will award the request for these two categories, amounting to $539,177.62.

### c.  Plaintiffs are entitled to their request for Capsicum Fees with a 20% reduction.

Finally, Plaintiffs request $416,725 in fees associated with the report of its forensic expert Capsicum.  Grant Decl., Exh. A at 4.  Defendants argue that this expense should be rejected for two principal reasons: first, "[t]he entirety of this expense was done . . . in support of a purposeful spoliation theory that was not adopted by the Court" and second, because "the specific work done by Capsicum was

---

[5] Defendants dispute the disbursements only to the extent that they argue the amount is inclusive of "depositions that should not have been taken, second attorneys at depositions, or 'concierge technical support' and 'conference suite' charges that are unexplained."  Def. Mem. at 25.  For the same reasons described above, the reductions Plaintiffs have made are reasonable and Defendants have not shown otherwise.

unreliable, unnecessary, and did not result in work product that could be reasonably relied upon by the Court or anyone else." Def. Mem. at 11.[6]

Contrary to Defendants' first argument, the record belies the assertion that Capsicum was hired solely as a Rule 37(e)(2) expert. *See, e.g.,* Transcript of November 7, 2019 Conference, Dkt. No. 365, at 64–65 (Plaintiffs' counsel advocating for forensic expert because he has "been trying to get to the bottom of two things: Why is [Mende's ESI] missing? And what else is missing?"), 70 (the Court articulating that "there are gaps that have not been explained . . . [w]hat Mr. Grant is trying to figure out is whether he has a Rule 37 motion, and the only way he can do that, he says, is to take further discovery . . ."). Moreover, two Capsicum Report excerpts, which Defendants themselves highlight to argue that the report pertained only to purposeful destruction of evidence, are actually factual statements regarding missing ESI, not "very serious allegations of intentional wrongdoing" as Defendants allege. Def. Mem. at 13 (highlighting Capsicum's conclusions that "[t]he original sources . . . that existed in June of 2018 are not contained among the ESI provided to us" and "[w]e estimate that over twenty thousand Mende emails are missing. Five years' worth of custodial email for Fleskes and Wood are missing from the

---

[6] While Defendants additionally assert that "Plaintiffs Do Not Justify Capsicum's Bills," they do not, in fact, argue that the hourly rate or total number of hours billed are not justified. Def. Mem. at 17. As such, the Court finds no reason to independently assess these issues.

sources provided to us as well.").[7]  Such conclusions can reasonably address a Rule

37(e)(1) inquiry.  As to their second argument, Defendants cite no law for the

apparent proposition that purported errors in an expert analysis render it

uncompensable.  This argument is particularly unpersuasive in light of the fact that

the Court expressly considered the Capsicum reports in adjudicating the sanctions

motion, and cited to one in its analysis granting sanctions under Rule 37(e)(1).  *See*

*CBF Industria de Gusa S/A*, 2021 WL 4190628, at *14 ("Because Plaintiffs have

demonstrated that at least some, if not all, emails during the Mende Email Gap

existed as late as April 2012, any spoliated emails during the Mende Email Gap

were destroyed after Defendants had a duty to preserve them.  *See* First Capsicum

Report, at 36.").  Therefore, Defendants' argument that the fees should be rejected

in their entirety is unavailing.

Notwithstanding the foregoing, a substantial portion of the Capsicum reports

was undoubtedly intended for Plaintiffs' use in seeking relief under Rule 37(e)(2),

which was ultimately unsuccessful.  *See, e.g.,* Def. Mem. at 12–13.  In assessing the

amount of fees to award a partially prevailing plaintiff "when the underlying claims

are intertwined, the court retains substantial discretion to take into account the

specific procedural history and facts of each case."  *Green v. Torres*, 361 F.3d 96, 99

(2d Cir. 2004) (citing *Hensley*, 461 U.S. at 435–37).   Here, Capsicum's work on

issues related to Rule 37(e)(1) and 37(e)(2) are inherently intertwined.  Unlike with

---

[7] The Court, consistent with both Defendants' memorandum and its prior rulings,
has utilized an ellipsis to omit some identifying information that, for these
purposes, has no bearing on its decision.

the Day Pitney Fees and Disbursements, however, the history of this case in general and the spoliation litigation in particular necessitate that the Capsicum Fees be further reduced.  The Court permitted Plaintiffs to engage Capsicum in large part to assess the potential intentionality of spoliation under Rule 37(e)(2). While Plaintiffs argue that they have already made downward adjustments to account for the proportion of time spent trying to prove purposeful spoliation, Pl. Rep. at 9, a review of the summary of billed entries reveals a number of items in which fees were assessed at a rate higher than what appears reasonable given the proportion of Capsicum's mandate to investigate what was ultimately the unsuccessful portion of the sanctions motion.  *See* Grant Decl., Exh. A at 4 (claiming 100% of "strategy" entry, 100% of "deposition" entry, and more than 75% of "data analysis" "data processing" and "project management" entries).

Thus, "based on [the Court's] experience . . . with the particular case at issue," a further reduction of the Capsicum requested fee is warranted.  *New York Youth Club*, 2016 WL 3676690, at *2.  Mindful of the Second Circuit's recent guidance, the Court will reduce the Capsicum portion of the fees requested by an additional 20% to balance Capsicum's work on the unsuccessful claim with the intertwined nature of the forms of relief sought by Plaintiffs.  *See Raja,* 43 F.4th at 90 (40% across-the-board reduction was "substantial" and "steep" as contrasted with "reasonable" across-the-board reduction of 15% in *Nnebe v. Daus*, No. 06-CV-4991 (RJS), No. 17-CV-7119 (RJS), 2022 WL 612967, at *7–8 (S.D.N.Y. Mar. 1, 2022)).

21

Therefore, Plaintiffs are entitled to recover 80% of their requested $416,725 in Capsicum Fees, or $333,380.  *See* Grant Decl., Exh. A at 4.[8]

## III.    CONCLUSION

For the foregoing reasons, the Courts grants Plaintiffs' motion as modified, and awards $872,557.62 (the sum of $539,177.62 in Day Pitney Fees and Disbursements and $333,380 in Capsicum Fees).  The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 557 and mark it as "granted as modified."


**SO ORDERED.**

Dated: September 8, 2022
     New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

---

[8] As a final argument, Defendants contend that the Court "should recognize the substantial amounts that [they] themselves spent on third-party data recovery services" and that "to the extent any portion of the fee award is aimed toward . . . establishing the proper incentives for the parties going forward," the Court should recognize that they have already paid a "tremendous" financial price.  Def. Mem. at 23–24.  Defendants cite no authority for this position.  Moreover, given the various considerations assessed as part of the sanctions motion as well as this fee application, this argument has no merit.